**Larry YARBOROUGH, Appellant,**

v.

**The STATE of Texas.**

No. 0235–94.

Court of Criminal Appeals of Texas, En Banc.

June 11, 1997.

Charles H. Roach, Fort Worth, for appellant.

Steven W. Conder, Asst. Dist. Atty., Fort Worth, Matthew Paul, State's Atty., Austin, for State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

WOMACK, Judge.

The question in this case is whether a prosecutor's unchallenged statement about a venire member's demeanor can constitute adequate support for a trial court's finding in a *Batson* hearing.

The venire panel in this case comprised 42 persons. Because one person was excused for cause, the last person reached for jury service was Number 33. The parties agreed that the State peremptorily challenged 7 black venire members and 2 Hispanic venire members. The parties also agreed that 10 of the 33 people were black, 3 of whom served on the jury. The appellant challenged each of these 9 strikes on *Batson* grounds. It is not disputed that the appellant made a *prima facie* showing that the State used peremptory challenges to exclude venire members from jury service because of their race.

When the State came forward to present race-neutral explanations for each of the contested strikes, the prosecutor offered to take the witness stand and be sworn. Defense counsel said he would "waive the oath as far as [the prosecutor] is concerned, being an officer of the Court, and assume the testimony is the same as if he is under oath."

When Venire Member Martinez was discussed, the prosecutor stated:

Mr. Martinez, quite frankly, Judge, the notes I put down when I got through talking to him was he has poor facial expressions. He's very inattentive, looks unhappy to be here, body language, posture was such that just made him feel he was uncomfortable. The only way I can characterize it is he had a very long, unhappy face, mouth down-turned at the corners, eyes downcast. And he was, quite frankly, that way not only to the State, but when being addressed by Defense Counsel.

My feelings were is that [*sic*] he just wasn't—didn't want to be here, wasn't happy to be here, and I just felt like he was an unknown quantity rather than risk having an unhappy person on the jury or somebody that didn't respond readily to questions that were asked, would be to strike him, Judge.

Defense counsel did not dispute the prosecutor's characterization of Martinez's demeanor. In reply, the defense counsel stated that Martinez had been a juror in a civil case, that he ranked punishment as the primary goal of the criminal justice system, and that "the only significant question" the prosecutor asked Martinez individually concerned his occupation. (In fact the prosecutor had asked

Martinez ten questions which inquired about some of these matters and about other matters as well. The defense counsel also addressed Martinez individually twice.) The prosecutor agreed that Martinez looked good "on paper" (the venire members had answered a written questionnaire), but that Martinez's body language and posture gave him a "gut feeling" Martinez did not want to be there.

The trial judge made no comment regarding whether he had observed Martinez.

The court heard dialogue from counsel about all the peremptory challenges. The court simply ruled, "I find that the reasons given by the State are reasonable and not racially motivated and deny the *Batson* challenge." The appellant does not question that the trial court's ruling was an adverse finding of fact.

The jury convicted the appellant of delivery of cocaine, and the court sentenced him to five years' confinement.

In the court of appeals the appellant presented one point of error, that under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the trial court erred in overruling his challenges to the State's systematic exclusion of nine venire members from the jury solely because of their race. The court of appeals sustained the point of error, reversed the judgment entered by the trial court, and remanded for a new trial. *Yarborough v. State*, 868 S.W.2d 913 (Tex. App.—Fort Worth 1994).

In its petition for discretionary review, the State claims that the trial court's ruling was not clearly erroneous, *see Tennard v. State*, 802 S.W.2d 678, 682 (Tex.Cr.App.1990), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991); *Whitsey v. State*, 796 S.W.2d 707, 726 (Tex.Cr.App.1989) (opinion on rehearing), and that therefore the court of appeals improperly reversed the judgment of the trial court. We granted review to determine if the court of appeals rendered an opinion in conflict with opinions of this Court and of other courts of appeals. Tex.R.App. Pro. 200(c)(1), (3).

The court of appeals addressed only the strike of Venire Member Martinez, in this fashion:

"When the State strikes a juror on a basis that cannot easily or objectively be determined by the reviewing court, that basis must be substantiated by *something other than the prosecutor's statement* and that something must be *on the record*. *See Roberson* [*v. State*, 866 S.W.2d 259, 261 (Tex.App.—Fort Worth 1993) ] (emphasis added). Such substantiating evidence can be an admission by opposing counsel, a finding by the trial court, or an admission by the panel member. *Id.*

.    .    .    .    .

In this case, there is no substantiating evidence on the record. The State gave only one *reason for excluding venireperson* Martinez and it was subjective. In addition, *the record* does not reveal the trial judge had an adequate opportunity to observe Martinez' demeanor because neither the State nor the defense extensively examined him during voir dire. Therefore, we find *the record* contains no evidence *corroborating* the prosecutor's statement.

Consequently, we hold the trial judge's finding, the prosecutor's explanation for striking Martinez is race neutral, is not supported *by the record* and the State failed to rebut Yarborough's prima facie showing of racial discrimination."

*Yarborough*, 868 S.W.2d 913, 914–15 (Tex. App.-Fort Worth, 1994) (emphases in original) (footnote omitted).

We think we detect two holdings in the court of appeals' opinion: (1) A trial court's *Batson* finding is unsupported if the record contains only a prosecutor's statement. (2) A State's strike for a "subjective" reason cannot be found to satisfy *Batson* without more evidence than a prosecutor's statement.

Though the court of appeals' discussion was in terms of the State's peremptory strikes and prosecutors' statements, we presume that it would apply equally to defendants' strikes and defense counsels' statements. The requirements of *Batson* apply equally to defendants, and the prosecution is equally permitted to challenge a defendant's

unconstitutional exercise of peremptory challenges. *See Georgia v. McCollum*, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992). The court of appeals did not state or imply any reason to treat prosecuting and defending counsel differently on this question, and we cannot think of any reason to do so.

As to the first holding, we believe the court of appeals did not give proper regard to the weight of uncontradicted statements by counsel about occurrences in the courtroom. A counsel's statement about an occurrence in the courtroom, which was made for the purposes of the record, recorded by the court reporter, undisputed by the opposing counsel, and unquestioned and unqualified by the judge in whose presence the statement was made, establishes the occurrence for purposes of the appellate record. *Hicks v. State*, 525 S.W.2d 177 (Tex.Cr.App.1975). This Court has specifically recognized the validity of such statements made during *Batson* hearings:

> The Court of Appeals, in its unpublished opinion, dismissed appellant's statements in the record because, "observations of counsel offered in support of his motion to dismiss the array do not constitute evidence." [Citation to court of appeals' slip opinion omitted.] The Court of Appeals' conclusion here is erroneous. In the instant case, the State did not dispute or object to any of the observations made by appellant before the trial court in support of his *Batson* motion. Because there were no objections made to appellant's undisputed observations, we hold that those observations constitute valid proof in support of appellant's prima facie case.

*Emerson v. State*, 820 S.W.2d 802, 804 (Tex. Cr.App.1991). *Accord, Rousseau v. State*, 824 S.W.2d 579 (Tex.Cr.App.1992); *Salinas v. State*, 888 S.W.2d 93 (Tex.App.—Corpus Christi 1994); *Moss v. State*, 877 S.W.2d 895 (Tex.App.—Waco 1994).

The procedure whereby counsel make statements for the record is especially well suited to the *Batson* hearing because the counsel (and the judge) naturally will be the best-placed observers of the venire members. Of course the lawyers are free to call each other as witnesses and to question each other formally and under oath. But they are also free to dispense with such formalities, as is often done and as was done in this case. The prosecutor's statement was support in the record for the trial judge's finding.

The basis of the court of appeals' second holding, that a peremptory challenge for "subjective" reasons must be supported by something other than counsel's statement, is not clear. It was made on authority of *Roberson v. State*, 866 S.W.2d 259, 261 (Tex. App.—Fort Worth 1993), an opinion of the same court which contains no more discussion than its opinion in this case. The *Roberson* opinion cites only *Daniels v. State*, 768 S.W.2d 314, 317 (Tex.App.—Tyler 1988, pet. ref'd), where no such proposition is to be found.

The *Daniels* opinion did hold that a prosecutor's statements about the inattentiveness of venire members were insufficient when the record showed that the prosecutor never personally questioned the venire members. The *Daniels* court also said that it was unwilling to hold that a juror's demeanor could never be a racially neutral reason for a peremptory challenge, but that such elusive, intangible, and easily contrived explanations must be scrutinized with a healthy skepticism lest the *Batson* protection become illusory. *Daniels*, 768 S.W.2d at 317. But this is not the same as saying as a matter of law that counsel's statement, no matter how credible, about a venire member's demeanor cannot support a trial court's finding.

Courts of other jurisdictions as well have expressed the need for trial courts to be especially careful in assessing the adequacy of counsel's observations of a venire member's demeanor as a race-neutral reason, but they all agreed that a careful trial court's acceptance of such a reason would be upheld on appeal. *E.g., Ex parte Branch*, 526 So.2d 609, 629 n. 16 (Ala.1987); *Williams v. State*, 634 So.2d 1034, 1039 (Ala.Cr.App.1993); *People v. Harris*, 129 Ill.2d 123, 176, 135 Ill.Dec. 861, 544 N.E.2d 357, 380 (1989); *State v. Hood*, 245 Kan. 367, 374, 780 P.2d 160, 166 (1989); *State v. McRae*, 494 N.W.2d 252, 257 (Minn.1992) (demeanor, tone and other factors certainly may be considered); *Hatten v. State*, 628 So.2d 294 (Miss.1993); Annotation,

20 A.L.R.5th 398, 417–18 (1994). One court which experimented with a rule similar to the court of appeals' rule in this case found it illogical and unacceptable. *People v. Johnson,* 47 Cal.3d 1194, 255 Cal.Rptr. 569, 767 P.2d 1047 (1989), *disapproving People v. Trevino,* 39 Cal.3d 667, 217 Cal.Rptr. 652, 704 P.2d 719 (1985). "In ruling out such subjective reasons, the majority in *Trevino* ... seems unwilling to trust the trial courts to conscientiously rule on the adequacy of the proffered explanations.... [I]f we cannot trust trial courts to do their job fairly, we might as well close up shop and [admit] that we, ourselves, were insincere when ... we professed our faith in the good judgment of the trial bench." *People v. Johnson,* 47 Cal.3d 1194, 1219, 255 Cal.Rptr. 569, 577–78, 767 P.2d 1047, 1056 (1989).

■ Because this case involves *Batson* litigation, we presume that the court of appeals derived its rule from the Equal Protection Clause of the Fourteenth Amendment to the Federal Constitution. State courts may interpret the United States Constitution in a manner that provides more protection to defendants than that contained in existing Supreme Court precedent, at least as long as that interpretation is consistent with precedent and until the Supreme Court indicates otherwise.

After the court of appeals delivered its opinion in this case, the Supreme Court made it clear that a federal appellate court could not hold as a matter of law that a state prosecutor's statement of his subjective dislike of venire members' appearances was a pretext. *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). The Court reemphasized the specific statement it made in *Batson v. Kentucky:* "Since the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." *Elem,* 514 U.S. at 769–71, 115 S.Ct. at 1772, 131 L.Ed.2d at 840, quoting *Batson,* 476 U.S. 79, 98 n. 21, 106 S.Ct. 1712, 1724 n. 21, 90 L.Ed.2d 69, 89 n. 21 (1986). *Elem* reminds us that the *Batson* decision is one of fact, not of *per se* rules of law. Far from requiring the *per se* rule that the court of appeals

stated in this case, these Fourteenth Amendment cases mean that statements about the demeanor or appearance of venire members must be judged for their credibility by trial courts, whose findings must be reviewed deferentially by appellate courts.

We agree that subjective evaluations of venire members could be used to disguise violations of the Equal Protection Clause. But this does not mean that such evaluations must always be held to have no weight. Trial judges are not without ability to detect pretexts. "[I]mplausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Elem,* 514 U.S. at 768, 115 S.Ct. at 1771, 131 L.Ed.2d at 839. And appellate courts are not bound by the rule of deference to accept every ruling of a trial court, especially when there is no specific finding of fact. Courts at both levels can consider such factors as the quantity and quality of either party's examination of the challenged venire member, whether the *Batson* movant cross-examined the counsel who made the peremptory challenge, whether the *Batson* movant rebutted the description of the venire member, whether the *Batson* movant proved that venire members of similar demeanor were not struck, and whether the judge was asked to rule on any conflict of fact. We believe that the vigorous use of these and other tools by an alert and watchful judiciary will be adequate to expose sham justifications for peremptory strikes.

■ In this case it was sufficiently shown in the record by the prosecutor's specific description, which was undisputed by the appellant and accepted by the trial court, that Venire Member Martinez did display a certain demeanor. Such a statement cannot be said as a matter of law to be insufficient. Further review of the trial court's ruling under the standards that are established in the *Batson* jurisprudence must be made.

The judgment of the court of appeals is reversed, and the cause is remanded to that court for further review of the appellant's point of error consistent with this opinion.

McCORMICK, Presiding Judge, concurring.

My only disagreement with the majority opinion is in its statement of the appellate standard for reviewing a trial court's ruling on a *Batson v. Kentucky* claim. *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The majority opinion seems to recognize the trial court is in the best position to make the call on a *Batson v. Kentucky* claim; yet the majority seems to adopt an almost *de novo* appellate standard for reviewing these rulings.[1]

I believe we should trust the trial courts to do their job fairly and announce a rule that the appellate courts in this State should show almost total deference to a trial court's ruling on a *Batson v. Kentucky* claim since the trial courts and not the appellate courts are in the best position to make the call. *See Villarreal v. State*, 935 S.W.2d 134, 139–141 (Tex.Cr. App.1996) (McCormick, P.J., concurring) (deference appellate courts afford trial courts' rulings usually is a function of which " 'judicial actor is better positioned' " to decide the issue in question). As the majority recognizes, the resolution of *Batson v. Kentucky* claims turns almost solely on credibility and demeanor. Trial courts, not appellate courts, are in the best position to make these calls.

> "An appellate court does not observe the demeanor of live witnesses, cannot see a shift of the eyes, sweat, a squirm, a tear, a facial expression, or take notice of other signs that may mean the difference between truth and falsehood to the fact finder. Even an inflection in the voice can make a difference in meaning. The sentence, '[s]he never said she missed him,' is susceptible of six different meanings, depending on which word is emphasized."

*See Tallman v. ABF*, 108 N.M. 124, 767 P.2d 363, 366 (1988).

With these comments, I concur in the Court's judgment.

KELLER, J., joins this concurrence.

OVERSTREET, Judge, concurring.

Because the court of appeals did not have the benefit of *Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), I agree that remand to that court is not inappropriate. However, I do not believe that the court of appeals was necessarily incorrect in its analysis as was done or that this remand can be interpreted to imply such. I simply have no disagreement with remanding for reconsideration in light of the subsequent *Purkett* opinion, with the understanding that *Purkett* does not mandate that the trial court accept the *Batson*-challenged party's facially raceneutral explanation, or that the appellate court affirm the trial court's acceptance of such explanation. Some facially race-neutral explanations are simply beyond rational acceptance; and of course the trial court is in the best position to make that determination. Nevertheless, the trial court's decision thereon is still subject to appellate review.

With these comments I join Judge Womack's opinion of the Court.

MANSFIELD, Judge, concurring.

Appellant Yarborough was convicted of delivery of a controlled substance (cocaine) and was sentenced to five years' imprisonment. His conviction was reversed by the court of appeals. *Yarborough v. State*, 868 S.W.2d 913 (Tex.App.–Fort Worth 1994). We granted the State's petition for discretionary review to consider the sole ground for review:

Whether the court of appeals properly found that the trial court was clearly erroneous in determining that the State's challenge of venireperson Mark Martinez was race-neutral.

During jury selection, appellant Yarborough challenged the State's use of its peremptory challenges. A *Batson* hearing was then held by the trial court. *Batson v, Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). It was established at the hearing the State used nine of its ten peremptory challenges to strike seven black and

---

1. The majority also seems to adopt a different standard of deference to a trial court's ruling "when there is no specific finding of fact." However, when there are no specific fact find- ings, my understanding has been that an appellate court should presume all fact findings which the record supports in support of the trial court's ruling.

two Hispanic venirepersons. Three black persons and no Hispanics actually served on the jury. The State gave its reasons for striking each of the nine minority venirepersons; defense counsel argued why he felt the reasons given by the State were not valid, i.e., they were a pretext.

With respect to one of the struck venirepersons, Martinez, the prosecutor stated he had "poor facial expressions, was very inattentive, looks unhappy to be here, body language, posture and such that just made him feel he was uncomfortable." The prosecutor further stated Martinez appeared the same way during questioning by both the State and the defense and while he "looked good on paper," the prosecutor had a "gut feeling" he did not want to be here. Defense counsel did not contest the State's characterization of Martinez' demeanor but pointed out the State asked Martinez only one question (about what he sold for a living), though the record indicates the State asked numerous questions of Martinez concerning several issues. The trial court, at the conclusion of the hearing, found "the reasons given by the State are reasonable and not racially motivated" and denied the *Batson* challenge. The trial court made no specific comments as to the State's characterization of Martinez' demeanor.

The court of appeals initially noted the State used nine of its ten peremptory strikes to exclude nine of twelve minority venirepersons. This statistical evidence was sufficient, in the court of appeals' opinion, to raise an inference of discrimination (in other words, a prima facie case); therefore, the State had the burden of demonstrating race-neutral reasons for its strikes of the nine minority venirepersons. *Yarborough, supra*, at 914.

The court of appeals, citing *Tennard v., State*, 802 S.W.2d 678, 680 (Tex.Crim.App. 1990), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991) and *Whitsey v., State*, 796 S.W.2d 707, 716 (Tex.Crim.App. 1989) (op. on reh'g.), noted further the trial court's findings at a *Batson* hearing are not

to be disturbed on appeal if they are supported by the record and are not "clearly erroneous." The role of the reviewing court is not to determine whether the State's explanations are credible but rather whether the trial court's ruling on the *Batson* motion was *supported by the record* and therefore not clearly erroneous.

The explanation given by the State with respect to its strike of Martinez, his demeanor, was subjective and, therefore, something more than the State's explanation was necessary to support the trial court's finding that the State's explanation was racially neutral. The court of appeals gave examples of such substantiating evidence which would support the State's explanation: an admission by opposing counsel, a statement or admission by the venireperson or a finding by the trial court. The court of appeals noted the record here was devoid of any such evidence in the record supporting the subjective explanation offered by the State, emphasizing the lack of any finding by the trial court. Therefore, the court of appeals held the trial court's finding the State's explanation for its strike of venireperson Martinez was racially neutral was not supported by the record. As the State did not rebut appellant's prima facie showing of racial discrimination as to its strike of venireperson Martinez, the court of appeals sustained appellant's point of error and reversed the trial court's judgment.[1] I join the opinion of the Court reversing the judgment of the court of appeals and write further to define what I believe constitutes a "prima facie case" entitling the movant to a hearing on a *Batson* motion.

## A. What Constitutes a Prima Facie Case Entitling the Movant to a Hearing on His *Batson* Motion?

As we stated in *Satterwhite v. State*, 858 S.W.2d 412 (Tex.Crim.App.), *cert. denied*, 510 U.S. 970, 114 S.Ct. 455, 126 L.Ed.2d 387 (1993):

In order to invoke the protections set forth in *Batson*, appellant must first raise

---

1. In its brief in support of its petition for discretionary review, the State contends the prosecutor's explanation was sufficient and race neutral where defense counsel—as here—did not cross-

examine the prosecutor or otherwise impeach his explanation. *See Vargas v. State*, 838 S.W.2d 552, 555–556 (Tex.Crim.App.1992); *Emerson v. State*, 820 S.W.2d 802, 804 (Tex.Crim.App.1991).

an inference of purposeful discrimination through the State's use of it peremptory strikes. Once appellant has established such purposeful discrimination, the burden of production shifts to the prosecutor to come forward with racially neutral explanations for the strikes. Once the prosecutor has articulated racially neutral explanations, the burden shifts back to the defendant to persuade the trial court that the "neutral explanation" for the strike is really a pretext for discrimination. [Citations omitted.] This Court will reverse the trial court's resolution of a *Batson* issue only if the court's findings are found to be clearly erroneous.

*Satterwhite, supra,* at 428.

We have held that a defendant may make his *Batson* motion at any time prior to the impanelment of the jury, that is, until "the members of the jury have been both selected and sworn." *Hill v. State,* 827 S.W.2d 860, 864 (Tex.Cr.App. 1992); Tex.Code-Crim.Proc.art. 35.261(a). Accordingly, a defendant waives his right to his *Batson* protections by an untimely raising of his *Batson* motion.

In a timely-filed *Batson* motion, the defendant must allege the State has exercised its peremptory strikes in a discriminatory manner by making a "prima facie case" of purposeful discrimination in order to be entitled to a hearing on his motion. We must initially determine what constitutes a "prima facie case" in the context of a *Batson* motion. Black's Law Dictionary defines "prima facie case" as: "such as will prevail until contradicted and overcome by other evidence. A case which has proceeded upon sufficient proof to that stage where it will support finding if evidence to the contrary is ignored." *Black's Law Dictionary,* Abridged Fifth Edition 1983. In *Linscomb v. State,* 829 S.W.2d 164 (Tex.Crim.App.1992) we found:

A "prima facie case" is what raises the issue, not what eventually disposes of it. In determining, therefore, whether a "prima facie case" is reflected on the record, courts are not to resolve the question of deliberate racial discrimination on its merits by assessing the probative weight of competing inferences or conflicting evidence. They are simply to decide whether the issue has been raised.

*Linscomb, supra,* at 167.

"The minimum quantum of evidence necessary to support a rational inference, as we have elsewhere described a 'prima facie case,' is not three pounds or half a bushel or a bakers' dozen. It is any relevant evidence with more than a modicum of probative value." *Linscomb, supra,* at 166, citing *Tompkins v. State,* 774 S.W.2d 195, 201 (Tex.Crim. App.1987).

It is evident from applicable case law that the proponent of a timely-raised *Batson* motion does not have to present much in the way of evidence to establish a "prima facie case," thereby entitling him to a hearing on his *Batson* motion. However, I believe we went too far in *Linscomb,* holding, in effect, mere statistical disparity by the State in its use of peremptory strikes against minority veniremembers as contrasted to nonminority venirepersons is *per se,* sufficient to establish a prima facie case of discrimination.

This is not to say, however, that mere numbers, standing alone, may not, in some circumstances, be sufficient to establish a prima facie case of *unlawful* discrimination, entitling the proponent of a *Batson* motion to a hearing. In *Chambers v. State,* 784 S.W.2d 29 (Tex.Crim.App.1989), we found a prima facie case was present when the State exercised peremptory challenges to strike all three eligible black venirepersons. In *Whitsey, supra,* we found a prima facie case was present where the State used peremptory challenges to strike all six eligible black venirepersons. Prima facie cases were also found to be present where:

1. The State peremptorily struck ten out of eleven eligible black venirepersons. *Miller–El v. State,* 748 S.W.2d 459 (Tex.Crim.App.1988).

2. Five out of six eligible black venirepersons were peremptorily struck by the State. *Dewberry v. State,* 776 S.W.2d 589 (Tex.Crim.App.1989).

The cases cited in the preceding paragraph are similar in that in each instance there was a substantial number of eligible minority ven-

irepersons and the State peremptorily struck all, or nearly all, of them. *Linscomb,* however, vastly expands the use of mathematics to establish a prima facie case by enshrining the concept of statistical disparity, also known as disparate impact analysis.[2]

To illustrate how disparate impact analysis would be used in the *Batson* context, let us assume the venire has forty members, ten of whom are minorities. The State exercises seven of its peremptory strikes against non-minority veniremembers, thereby striking 23% of them (seven out of thirty). The State uses its remaining three peremptory strikes against minority veniremembers, thereby striking 30% of them (three out of ten). Therefore, since the percentage of minority venirepersons struck exceeds that of nonminority venirepersons struck, a prima facie case of impermissible discrimination under disparate impact analysis is present and the defendant is entitled to a *Batson* hearing, based on the implicit holding of *Linscomb.*

In my opinion, percentage disparate impact analysis has no place in determining, standing alone, whether a defendant has made a prima facie case under *Batson.* Its dangers are self-evident:

(1) *Batson* hearings would be turned into battles of statistics. Given that the decision to exercise a peremptory strike is often based on many factors, *Cantu v. State,* 842 S.W.2d 667, 689 (Tex.Cr.App. 1992) it is hard to imagine any case where the percentage of struck minority venirepersons will be the same or nearly the same as that of struck nonminority venirepersons, or vice versa.

(2) How great must the percentage disparity be for there to be a prima facie case of impermissible discrimination? 1% ? 5% ? 20% ? Disparate percentage analysis, by its very nature, would result in different definitions of what constitutes a prima facie case, depending on the trial court.

(3) The whole rationale behind *Batson* and its progeny is to ban *intentional* discrimination by the State in its use of its peremptory strikes, not inadvertent disparate impact resulting from reasons clearly nondiscriminatory on their face, given to strike minority or female venirepersons. As noted above, no intent to discriminate need be shown under disparate impact analysis.

In my opinion, in order to show a prima facie case entitling him to a *Batson* hearing based on numbers alone, the defendant must show the following:

(1) the State used its peremptory strikes to remove all or substantially all of the minority members of the venire; or

(2) the State exercised all or substantially all of its peremptory strikes against minority venirepersons.[3]

## B. The Standard of Review of Denial of Appellant's Motion For a *Batson* Hearing or Overruling of a *Batson* Motion After a Hearing

A reviewing court is not to disturb the trial court's ruling on appellant's *Batson* motion if the ruling is supported by the record and is not clearly erroneous. *Vargas, supra; Satterwhite, supra.* See also, *Purkett v.,Elem,* 514 U.S. 765, 769–71, 115 S.Ct. 1769, 1772, 131 L.Ed.2d 834 (1995). In my opinion, this standard of review should be the same whether the trial court found there was not a prima facie case entitling the defendant to a hearing on his *Batson* motion or, after conducting a *Batson* hearing, determined the State's explanation for its use of its peremptory strikes was racially neutral (or was gender-neutral). The question presented here is what constitutes a record which adequately

---

**2.** Disparate impact analysis is often used in employment discrimination and voting rights matters. It is a controversial concept and has been roundly criticized by many as promoting the de facto use of quotas. Under disparate impact analysis, no intent to discriminate need be shown.

**3.** A defendant still will be able to make a prima facie case entitling him to a *Batson* hearing where numbers/percentages are not relevant.

For example, the defendant can allege the State struck a minority venireperson without explanation but did not strike a nonminority venireperson with the same characteristics, based on the juror information cards and information elicited during voir dire. This could be a prima facie case provided the defendant pointed to supporting evidence in the record which raises the inference of impermissible discrimination.

supports the trial court's ruling on a *Batson* motion so as to entitle it to deference on the part of the reviewing court as not being clearly erroneous.

Ideally, the trial court makes oral or written findings of facts and conclusions of law on its ruling with respect to its denial of appellant's *Batson* motion after a *Batson* hearing. Likewise, the better practice would be for the trial court to enter, on the record, its finding that appellant failed to make a prima facie case of purposeful discrimination and thus was not entitled to a *Batson* hearing.[4] Such findings of facts and conclusions of law, being part of the record, would enable the reviewing court to determine whether the trial court abused its discretion, i.e., whether its ruling was clearly erroneous.

A part of the issue before us is whether the record must reflect more than the State's explanation where it consists solely of the peremptorily-struck venireperson's demeanor. Demeanor, as contrasted to characteristics like obesity, occupation, and family members with criminal records, is not quantifiable and thus more difficult for a reviewing court to examine without something on the record. In my opinion, if the State's racially-neutral explanation is based solely on the struck venireperson's demeanor, and appellant cross-examined the State or otherwise impeached the State's explanation, the appellant has met his burden of making a prima facie case of impermissible discrimination as to the State's striking of that venireperson, *absent* a showing in the record that the trial court's observations as to that venireperson were consistent with the State's assertions. *Morris v. State*, 940 S.W.2d 610 (Tex.Crim. App—delivered 1996). However, if appellant did not rebut the State's demeanor-based explanation, or did not otherwise impeach it, then the record is sufficient to support the trial court's ruling the State's explanation was racially-neutral. In effect, in such circumstances, appellant waives *Batson* error

with respect to that venireperson. *Vargas, supra; Emerson, supra.*

## C. Conclusion

The court of appeals erred in holding the trial court's finding the State's racially-neutral explanation for its strike of venireperson Martinez (based on his demeanor) was not supported by the record, and sustaining appellant's point of error. Because the record was devoid of any evidence or assertions by appellant in opposition to what *does* appear on the record—the State's explanation for its strike of venireperson Martinez—appellant waived Batson error, if any, with respect to venireperson Martinez and the trial court's overruling of his *Batson* motion was not clearly erroneous. Thus, I would reverse the judgment of the court of appeals and would affirm the judgment of the trial court.

With these comments, I join the opinion of the Court.

BAIRD, Judge, dissenting.

The majority holds a race-neutral explanation on the basis of demeanor not supported with independent, objectively verifiable evidence which appears in the record, is sufficient to defeat a prima facie case under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Believing more is required, I respectfully dissent. The basis for my belief comes from my understanding of the meaning and purpose of *Batson* and its progeny. Because this area of the law is confusing, I hope this opinion will serve as much as a clarification of the existing case law as a dissent to the majority opinion.

## I.

In *Batson*, the Supreme Court sought to achieve two primary goals: (1) to prohibit the exclusion of veniremembers on the basis of race; and, (2) to protect the integrity of the judicial process in the use of peremptory challenges. In order to achieve these goals,

---

4. The trial court's findings and conclusions should specifically address whether the State's explanation with respect to each peremptorily-struck venireperson was sufficient and race-neutral, taking into account appellant's assertions that the State's explanation was pretextural and

the evidence offered by appellant in support of such assertions. *Batson, supra,* at 96–98, 106 S.Ct. at 1723; *see also, Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); *Williams v. State,* 804 S.W.2d 95, 101 (Tex.Crim. App.1991).

the Court held the Fourteenth Amendment's Equal Protection Clause makes it:

... impermissible for a prosecutor to use his challenges to exclude blacks from the jury for reasons wholly unrelated to the outcome of the particular case on trial or to deny to blacks the same right and opportunity to participate in the administration of justice enjoyed by the white population.

Id., 476 U.S. at 91, 106 S.Ct. at 1720, quoting Swain v. Alabama, 380 U.S. 202, 224, 85 S.Ct. 824, 838, 13 L.Ed.2d 759 (1965) (citations and quotations omitted).[1]

The Equal Protection Clause forbids the exclusion of veniremembers on the "assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." Batson, 476 U.S. at 89, 106 S.Ct. at 1719 (footnotes and citations omitted).[2] See also, Esteves v. State, 849 S.W.2d 822, 823 (Tex.Cr.App.1993) (Tex. Const. art. I, § 3a and Tex.Code Crim. Proc. Ann. art. 35.261 prohibit the exercise of peremptory challenges based on race). And, jury selection procedures which purposefully exclude African–Americans undermine public confidence in the criminal justice system. Batson, 476 U.S. at 87, 106 S.Ct. at 1718. The harm which results from racially discriminatory jury selection extends beyond the defendant to the excluded juror and the entire community. Ibid. It deprives citizens of the opportunity to serve on a jury, often the citizens' most significant opportunity to participate in the democratic process. Powers v. Ohio, 499 U.S. 400, 406–07, 111 S.Ct. 1364, 1368–69, 113 L.Ed.2d 411 (1991).

Batson developed a procedural framework to establish a violation of the Equal Protection Clause. First, the defendant must produce prima facie evidence that the prosecutor exercised peremptory challenges on the basis of race. When the prima facie case is made, the burden shifts to the State to articulate a race-neutral explanation for its exclusion of the veniremember(s) in question.[3] If the State articulates a race-neutral explanation, the defendant is given an opportunity to respond since the defendant has ultimate burden of proving purposeful discrimination. Finally, the trial judge must determine whether the defendant met that burden. In other words, the defendant's arguments must be weighed against the State's argument, taking into consideration any on-the-record, independent, objective evidence presented by both sides. I will review each step in this procedural framework as well as the appellate process involved in its review.

## II.

After making a Batson objection, the defendant has the burden of producing prima facie evidence to show the State used a peremptory challenge to exclude a veniremember on the basis of race. The Supreme Court initially established a three prong test to make a prima facie case: 1) a showing that

---

1. This prohibition has been codified at 18 U.S.C. § 243, which provides:

No citizen possessing all other qualifications which are or may be prescribed by law shall be disqualified for service as grand or petit juror in any court of the United States, or of any State on account of race, color, or previous condition of servitude; and whoever, being an officer or other person charged with any duty in the selection or summoning of jurors, excludes or fails to summon any citizen for such cause, shall be fined not more than $5,000.

The Equal Protection Clause also prevents the discriminatory use of peremptory challenges on the basis of gender. J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).

2. Tex.Code Crim. Proc. Ann. art. 35.261 is our legislative attempt to codify Batson:

The Court shall grant the motion of a defendant for dismissal of the array if the court

determines that the defendant is a member of an identifiable racial group, that the attorney representing the state exercised peremptory challenges for the purpose of excluding persons from the jury on the basis of their race, and that the defendant has offered evidence of relevant facts that tend to show that challenges made by the attorney representing the state were made for reasons based on race.

3. Under Batson, as modified by Hernandez v. New York, 500 U.S. 352, 359, 372, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991), we do not look to determine whether a prima facie case has been made if the State offers a race-neutral explanation for its peremptory challenge(s). See also, Chambers v. State, 866 S.W.2d 9, 23 (1993); Wheatfall v. State, 882 S.W.2d 829, 835 (Tex.Cr. App.1994); and Rhoades v. State, 934 S.W.2d 113, 124 (Tex.Cr.App.1996)(plurality op.).

the defendant is a member of a cognizable racial group; 2) that the prosecutor exercised peremptory challenges to remove veniremembers of the defendant's race; and, 3) these facts and any other relevant circumstances which raise an inference that the prosecutor used peremptory challenges to exclude the veniremembers from the petit jury on the basis of race. *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723. However, the Court subsequently deleted the first and second prongs. *Powers*, 499 U.S. at 416, 111 S.Ct. at 1373–1374; *see also, Cook v. State*, 858 S.W.2d 467, 471–472 (Tex.Cr.App.1993) ("... [T]he race of a defendant is irrelevant to a *Batson* challenge ... it is also not necessary ... that the veniremember be a member of a particular racial group."). Thus, to make a prima facie case, the defendant need only raise an inference that the State used a peremptory challenge to exclude a veniremember on the basis of race.

In *Linscomb v. State*, 829 S.W.2d 164, 166 (Tex.Cr.App.1992), we held prima facie evidence is any relevant evidence with more than a modicum of probative value. An inference is nothing more than an inclination towards a belief, *ibid.*, and the defendant's burden of proof cannot be onerous. *See, Dewberry v. State*, 776 S.W.2d 589, 590 (Tex. Cr.App.1989). This is so because a prima facie case is what raises the issue, not what eventually disposes of it. *Linscomb*, 829 S.W.2d at 167.

The procedures adopted in *Batson* were patterned after Supreme Court opinions addressing employment discrimination. *Batson*, 476 U.S. at 96–98, n. 19–21, 106 S.Ct. at 1722–24, n. 19–21. *See generally*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* In that context, proof of a minority applicant's rejection for employment is alone insufficient to make a prima facie case. Instead the applicant must further demonstrate "circumstances which give rise to an inference of unlawful discrimination." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Similarly,

the Supreme Court contemplated that the defendant's prima facie burden in the context of *Batson* requires more than proof of a peremptory challenge exercised against a veniremember of a certain race. *See, Linscomb*, 829 S.W.2d at 166 ("[T]he bare fact of strikes exercised against persons of a certain race does not necessarily reveal the work of a racially prejudiced mind.").

The question then arises: What evidence will allow such an inference? *Batson* allows the defendant to present *any* relevant evidence to make a prima facie showing.[4] *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723. In *Keeton v. State*, 749 S.W.2d 861 (Tex.Cr.App.1988)(hereinafter *"Keeton II"*), we relied upon language from the Alabama Supreme Court in *Ex parte Branch*, 526 So.2d 609 (Ala.1987), to illustrate the various types of evidence which could be used to make a prima facie case of discrimination:

1. Evidence that the "jurors in questions share[d] only this one characteristic—their membership in the group—and that in all other respects they [were] as heterogeneous as the community as a whole." For instance, "it may be significant that the persons challenged, although all black, include both men and women and are a variety of ages, occupations, and social or economic conditions." indicating that race was the deciding factor.

2. A pattern of strikes against black jurors on the particular venire; e.g., 4 of 6 peremptory challenges were used to strike black jurors.

3. The past conduct of the state's attorney in using peremptory challenges to strike all blacks from the jury venire.

4. The type and manner of the state's attorney's questions and statements during voir dire, including nothing more than desultory voir dire.

5. The type and manner of questions directed to the challenged juror, includ-

---

4. In the Title VII context the Supreme Court held the circumstances which allow an inference of discrimination "will vary ... in different factual situations." *Burdine*, 450 U.S. at 254, n. 6, 101

S.Ct. at 1094, n. 6 (quoting *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802, n. 13, 93 S.Ct. 1817, 1824, n. 13, 36 L.Ed.2d 668 (1973)).

ing a lack of questions, or a lack of meaningful questions.

6. Disparate treatment of members of the jury venire with the same characteristics, or who answer a question in the same or similar manner; e.g., in Slappy, a black elementary school teacher was struck as being potentially too liberal because of his job, but a white elementary school teacher was not challenged.

7. Disparate examination of members of the venire; . . . a question designed to provoke a certain response that is likely to disqualify a juror was asked to black jurors, but not to white jurors.

8. Circumstantial evidence of intent may be proven by disparate impact where all or most of the challenges were used to strike blacks from the jury.

9. The state used peremptory challenges to dismiss all or most black jurors.

*Keeton II,* 749 S.W.2d at 867 (quoting *Ex parte Branch,* 526 So.2d at 622–623).[5] Therefore, to make a prima facie case the defendant must produce evidence, more than the peremptory challenge itself, which allows an inference of discrimination. This additional evidence insures the peremptory challenges are put in context. Only when we view the context in which the peremptory challenges occurred may an inference of discrimination arise.

### III.

#### A.

After the defendant makes a prima facie case, "there is a presumption that the per-

emptory challenges were used to discriminate against black jurors." *Keeton II,* 749 S.W.2d at 867. When this occurs, the State must provide a neutral, clear, and reasonably specific, race-neutral explanation for its peremptory challenge.[6] *Batson,* 476 U.S. at 98, n. 20, 106 S.Ct. at 1724, n. 20. This requirement of a race-neutral explanation means an explanation other than race. *Hernandez,* 500 U.S. at 374, 111 S.Ct. at 1874 (O'Connor, J., concurring). Unless the State's race-neutral explanation is inherently discriminatory, the explanation will be deemed race-neutral. *Hernandez,* 500 U.S. at 360, 111 S.Ct. at 1866.

*Batson* provided little guidance on what constituted a sufficient race-neutral explanation. The Court defined racially neutral explanations in the negative, holding:

> . . . [The] prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption—or his intuitive judgment—that they would be partial to the defendant because of their shared race. . . . Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or affirming his good faith in making individual selections.

*Batson,* 476 U.S. at 97–98, 106 S.Ct. at 1723–1724 (citations and footnotes omitted).

In *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), the defendant objected to the State's exclusion of two black

---

**5.** We have reviewed the defendant's prima facie showing of discrimination in only nine cases. In each case the defendant's evidence involved proof that most, if not all, of the minority veniremembers were excluded. *See, Pondexter v. State,* 942 S.W.2d 577, 581 (Tex.Cr.App.1996) (A prima facie case is made when the State strikes all of the black veniremembers.). *See, Cook,* 858 S.W.2d at 472 (three of five minority veniremembers struck); *Linscomb,* 829 S.W.2d at 165 (four of six black veniremembers struck); *Emerson v. State,* 820 S.W.2d 802, 803 (Tex.Cr.App. 1991) (four of six black veniremembers struck); *Salazar v. State,* 795 S.W.2d 187, 193 (Tex.Cr. App.1990) (State struck sole Hispanic veniremember); *Whitsey v. State,* 796 S.W.2d 707, 710 (Tex.Cr.App.1989) (six of six black veniremembers struck); *Chambers v. State,* 784 S.W.2d 29, 31 (Tex.Cr.App.1989) (three of three black

veniremembers struck); *Dewberry,* 776 S.W.2d at 591 (five of six veniremembers struck); *and, Miller-El v. State,* 748 S.W.2d 459 (Tex.Cr.App.1988) (ten of fourteen black veniremembers struck). In *Emerson,* the defendant further argued the State failed to question one of the excluded veniremembers. *Id.,* 820 S.W.2d at 803.

**6.** *Batson*'s requirement of a race-neutral explanation also arose in the Title VII context. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. The Court placed a burden of production on the State because such a burden required the State to refute the defendant's prima facie case of discrimination, and provided the defendant a "full and fair opportunity to demonstrate pretext." *Id.,* 450 U.S. at 256–7, 101 S.Ct. at 1095.

veniremembers. The prosecutor stated he struck the veniremembers because one had long hair, and both had mustaches and beards. *Id.,* 514 U.S. at 766–67, 115 S.Ct. at 1770. The Court found these race-neutral explanations were facially valid, and held the raceneutral explanation does not have to be persuasive or even plausible. *Ibid.* In other words, the race-neutral explanation does not have to make sense, it just cannot be racially discriminatory. *Id.,* 514 U.S. at 767–69, 115 S.Ct. at 1771. The Court stated:

> ... But to say that a trial judge *may choose to disbelieve* a silly or superstitious reason (in its ultimate *Batson* decision) is quite different from saying that a trial judge *must terminate* the inquiry at step 2 when the race neutral reason is silly or superstitious.

*Ibid.* Thus, at this step in the *Batson* procedural framework, the State must provide a racially-neutral explanation for its exclusion of the minority veniremember which consists of more than a mere denial of the defendant's prima facie evidence. *Ibid.*

### B.

The Supreme Court has never addressed the sufficiency of a race-neutral explanation involving demeanor. In *Keeton II v. State,* 749 S.W.2d at 869, we relied upon *State v. Tubbs,* 155 Ariz. 533, 747 P.2d 1232, 1236 (App.1987), wherein the Arizona Court of Appeals held "an elusive, intangible explanation for exclusion might not qualify as racially neutral." However, the *Tubbs* Court held that "such is not the case when the [race-neutral] explanation is coupled with an objectively verifiable reason." *Ibid. See also, Morris v. State,* 940 S.W.2d 610, 612 (Tex.Cr. App.1996) (The trial judge stated for the record that the prosecutor's explanations of demeanor were consistent with the judge's observations.). Indeed, several of our courts of appeals insist "[w]hen the State strikes a juror on a basis that cannot easily or objectively be determined by the reviewing court, that basis must be substantiated by *something other than the prosecutor's statement* and that something must be *on the record.*" *Roberson v. State,* 860 S.W.2d 162, 165 (Tex. App.—Fort Worth 1993) (emphasis in original). *See also, Hughes v. State,* 850 S.W.2d

260, 266 (Tex.App.—Ft. Worth 1993) ("When the prosecutor relies on the veniremember's attitude or demeanor, and the record of the voir dire reflects no hostility toward the State, the prosecutor's stated reason for the strike must specifically state the body language or nonverbal actions that led the prosecutor to believe that the veniremember was biased against the State."); *Woods v. State,* 801 S.W.2d 932, 937–38 (Tex.App.—Austin 1990) (State's explanation concerning lack of eye contact and general claim of lack of attentiveness was insufficient when the veniremember was asked only one question and the veniremember's demeanor could not be objectively verified by the record); *C.E.J. v. State,* 788 S.W.2d 849, 857 (Tex.App.—Dallas 1990) (*Batson* requires trial judges to scrutinize elusive, intangible, and easily contrived explanations with a healthy skepticism.); *Daniels v. State,* 768 S.W.2d 314, 317 (Tex.App.—Tyler 1988) ("Although we are unwilling to say that a juror's demeanor cannot ever be a racially neutral motive for a prosecutor's peremptory challenge, the protection of the constitutional guarantees that *Batson* recognizes requires the court to scrutinize such elusive, intangible, and easily contrived explanations with a healthy skepticism."). On the other hand, other courts of appeals have found a race-neutral explanation of demeanor sufficient to rebut prima facie evidence of discrimination. *See, e.g., Straughter v. State,* 801 S.W.2d 607, 613 (Tex.App.—Houston [1st Dist.] 1990) ("It was appellant's burden to do more than simply state his disagreement with some of the prosecutor's explanations; he was required to prove affirmatively that the prosecutor's racially neutral explanations were a sham or pretext."); *Harrell v. State,* 882 S.W.2d 65, 67 (Tex.App.—Houston [14th Dist.] 1994) ("Inattentiveness is a racially neutral reason for exercising a peremptory strike."); *Young v. State,* 848 S.W.2d 203, 209 (Tex.App.—Dallas 1992) (A juror's inattentiveness may be a race-neutral reason for exercising a peremptory strike.).

Other states addressing this issue require the trial judge to either closely scrutinize the explanation or make an on-the-record, factual determination of the merits of the demeanor

related explanation offered by the State. *See, State v. Hood,* 245 Kan. 367, 780 P.2d 160, 166 (1989) ("[T]rial Judge must be particularly sensitive when body language, alone, is advanced as a reason for striking a juror of the defendant's race."); *State v. Walston,* 256 Kan. 372, 886 P.2d 349, 352 (1994) (Veniremember's "nods, leans, winks, smiles, or scowls do not show upon the record, unless counsel expressly makes a note of them"; for this reason, a trial judge must be particularly sensitive when body language is advanced as the race-neutral reason for a strike.); *People v. Harris,* 129 Ill.2d 123, 135 Ill.Dec. 861, 544 N.E.2d 357, 380 (1989) ("[F]ocus upon a venireperson's body language or demeanor must be closely scrutinized because they are subjective and can be easily used by a prosecutor as a pretext for excluding persons on the basis of race."); *Avery v. State,* 545 So.2d 123, 125 (Ala.Cr. App.1988) (The State's explanations of "body language," "negative attitude," and "demeanor" were tenuous and require "close scrutiny."); *State v. McRae,* 494 N.W.2d 252, 257 (Minn.1992) (The court criticized an appellate record which provided "no real support" for any argument that the demeanor of the juror, tone used in responding, and other similar factors played a part in the prosecutor's decision to strike.); *Hatten v. State,* 628 So.2d 294, 298 (Miss.1993) (Trial judge must make "an on-the-record, factual determination of the merits of the reasons cited by the State for its use of peremptory challenges against potential jurors."); *and, Williams v. State,* 634 So.2d 1034, 1046 (Ala.Cr.App.1993) (Bowen, J. dissenting) (State should have supplemented the record since body language explanations for strikes of veniremembers are especially subject to abuse.). Hence, other jurisdictions have recognized the danger which arises when demeanor is advanced as a race-neutral explanation for a veniremember's exclusion.

The dangers inherent in race-neutral explanations of demeanor cannot be eliminated by simply requiring a "closer scrutiny" of such evidence. The closer scrutiny standard makes it virtually impossible for an appellate court to meaningfully review the trial judge's ultimate ruling because the record is silent as to demeanor. Therefore, I would hold the racially-neutral statements of demeanor must be supported with independent, objectively verifiable evidence which appears in the record.

## IV.

If the State produces a race-neutral explanation, the defendant must be given the opportunity to demonstrate the State's race-neutral explanations are untrue or pretextual. This is so because the defendant has the ultimate burden of proving the State excluded veniremembers on the basis of race. *See, Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *and,* Tex.Code Crim. Proc. Ann. art. 35.261. *Tompkins v. State,* 774 S.W.2d 195, 202 (Tex. Cr.App.1987) ("[I]t is the burden of the accused to persuade the trial judge by a preponderance of the evidence that the allegations of purposeful discrimination are true in fact."); *Salazar v. State,* 795 S.W.2d 187, 192 (Tex.Cr.App.1990); *Newsome v. State,* 771 S.W.2d 620, 621 (Tex.App.—Dallas 1989); *Williams v. State,* 767 S.W.2d 872, 874 (Tex. App.—Dallas 1989). Therefore, the defendant must have the opportunity to rebut the State's explanation:

> ... The reason the equal protection clause grants the defendant the right of cross-examination is so that he can *show the trial judge* why the prosecutor's stated reasons may indicate bad faith (such as where they reveal disparate treatment of veniremen) or are facially unlawful. The adversarial *Batson* hearing that is the defendant's Constitutional right affords him a reasonable opportunity to prove up his equal protection case *in the trial court.*

*Young v. State,* 826 S.W.2d 141, 148 (Tex.Cr. App.1991) (Campbell, J., dissenting) (emphasis in original).[7] *Batson* contemplated this

**7.** *See also, U.S. v. Thompson,* 827 F.2d 1254, 1258 (9th Cir.1987):

... The right of a criminal defendant to an adversary proceeding is fundamental to our system of justice. This includes the right to be personally present and to be represented by counsel at critical stages during the course of the prosecution. This is not mere idle formalism. Our system is grounded on the notion that truth will most likely be served if the decision maker—judge or jury—has the benefit of forceful argument by both sides.

adversarial process. *See*, U.S. v. *Clemons*, 941 F.2d 321, 323–324 (5th Cir.1991); *U.S. v. Alcantar*, 897 F.2d 436, 438 (9th Cir.1990); *U.S. v. Roan Eagle*, 867 F.2d 436, 441 (8th Cir.1989); *cf.* U.S. v. *Rudas*, 905 F.2d 38 (2nd Cir.1990). Consequently, the trial judge must allow the defendant an opportunity to prove the State excluded veniremembers on the basis of race.

## V.

The trial judge must determine whether the defendant met his burden of showing the State excluded a veniremember on the basis of race.[8] *Batson*, 476 U.S. at 98, 106 S.Ct. at 1724. The trial judge may not abdicate this responsibility, nor leave such questions to be resolved by an appellate court. The trial judge is the fact finder and must find the facts fairly and judiciously, according to the burdens of proof prescribed by law. *Tompkins*, 774 S.W.2d at 205. However, the trial judge may consider, and state for the record, past experiences with a particular prosecutor to determine whether the prosecutor racially discriminated in the exercise of peremptory strikes. *Morris*, 940 S.W.2d at 612.

Having a remedy available in the trial court is central not only to *Batson*'s holding that a defendant has a right to be tried by a jury selected in a non-discriminatory manner, it distinguishes *Batson* from prior cases dealing with racial discrimination and peremptory challenges. *See and compare, Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) *and, Batson*, 476 U.S. at 86, 106 S.Ct. at 1717. Because juries selected in a discriminatory manner harm not only the defendant and the excluded juror, but the

community as well by undermining the public's confidence in the criminal justice system, *Id.*, 476 U.S. at 87, 106 S.Ct. at 1718, the Supreme Court anticipated that a remedy would be available in the trial court. *See, Batson*, 476 U.S. at 94, n. 18, and 98, n. 24, 106 S.Ct. at 1721, n. 18, and 1724, n. 24. This aspect of the *Batson* decision is important because the Supreme Court believed an expeditious decision regarding equal protection violations will increase respect for our criminal justice system, strengthen the rule of law, and further the ends of justice. *Id.*, 476 U.S. at 99, 106 S.Ct. at 1724. Therefore, if the trial judge determines the State wrongfully excluded a veniremember, the trial judge must fashion a remedy by either quashing the panel or reinstating the veniremembers wrongfully excluded. *Curry v. Bowman*, 885 S.W.2d 421, 425 (Tex.Cr.App. 1993); Tex.Code Crim. Proc. Ann. art. 35.261.[9]

## VI.

Because a trial judge's decision on the ultimate question of discrimination "represents a finding of fact of the sort accorded great deference on appeal," *see*, n. 10, *supra*, appellate courts apply a clearly erroneous standard of review to the steps in the *Batson* procedural framework. *Hernandez*, 500 U.S. at 365, 369, 111 S.Ct. at 1869, 1871 (This standard makes particular sense in the *Batson* context, because the finding will "largely turn on evaluation of credibility."). In practice, the clearly erroneous standard of review means that "[w]here there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erro-

---

*Ibid.* (Citations omitted.)

8. The trial judge must make findings of fact and conclusions of law to support his determination. *See, Batson* 476 U.S. at 98, 106 S.Ct. at 1724; *Henry v. State*, 729 S.W.2d 732, 737 (Tex.Cr.App. 1987); *Keeton v. State*, 724 S.W.2d 58, 66 (Tex. Cr.App.1987) (*Keeton I*).

9. In his article on *Batson*, Judge Campbell stated:

[If the] objection was based on the Fourteenth Amendment, then "the [trial] court may fashion a remedy in its discretion consistent with *Batson* and its progeny." *Curry v. Bowman*, 885 S.W.2d 421 (Tex.Cr.App.1993). Such remedies may include reinstatement of

the struck juror(s) on the panel. *Id.* If the objection was based on Article 35.261, then the only remedy in a non-capital case is the calling of a new "array." If the objection was based on Article 35.261 and the case is a capital one in which potential jurors are questioned in mini-panels, then the trial court may properly dismiss only the mini-panel involved and not the entire array called for the capital case. *Butler v. State*, 872 S.W.2d 227 (Tex.Cr.App. 1994).

Judge Charles F. Campbell and William Green, *Peremptory Challenges and Equality Under the Law: A Batson Update, Forum*, State Bar Criminal Justice Section, March 1995.

neous." *Id.*, 500 U.S. at 369, 111 S.Ct. at 1871. Further, the appellate court must be left with a "definite and firm conviction that a mistake has been committed" before it overturns the trial judge's ruling. *Id.*, 500 U.S. at 370, 111 S.Ct. at 1872 (citation omitted). A trial judge's ruling which is supported by the record is never clearly erroneous. *See generally, Vargas v. State,* 838 S.W.2d 552, 554 (Tex.Cr.App.1992).

We enumerated a non-exclusive list of factors to consider when reviewing a trial judge's ruling on a *Batson* objection. Those factors are:

1. The reason given for the peremptory challenge is not related to the facts of the case;

2. There was a lack of questioning to the challenged juror or a lack of meaningful questions;

3. Disparate treatment—persons with the same or similar characteristics as the challenged juror were not struck; [10]

4. Disparate examination of members of the venire, i.e., questioning a challenged juror so as to evoke a certain response without asking the same question of other panel members; and

5. An explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically.

*Whitsey v. State,* 796 S.W.2d 707, 713–714 (Tex.Cr.App.1989); and *Keeton II,* 749 S.W.2d at 868. We held the presence of any one of these factors "tends to show that the State's reasons are not actually supported by the record or are an impermissible pretext." *Whitsey,* 796 S.W.2d at 713. We deemed the factors "essential for the trial court to utilize in compiling its findings of facts and conclusions of law at the termination of the *Batson* hearing." *Williams v. State,* 804 S.W.2d at 105. *See also, Keeton II,* 749 S.W.2d at 866 (Tex.Cr.App.1988); *and, Whitsey,* 796 S.W.2d at 713 (*Batson*'s requirement that the prosecutor give "clear and reasonably specific" explanations of "legitimate reasons" for his use of peremptory challenges "man-

dates that the trial judge evaluate the reasons given by the prosecutor in light of the circumstances of that trial to determine whether the explanations are merely a pretext."). When the State's race-neutral explanation appears to be pre-textual, and are not supported by the record, the appellate court must reverse.

## VII.

In part III B, *supra,* I stated that a race-neutral explanation on the basis of demeanor must be supported by independent, objectively verifiable evidence in the record. Under that standard of review, the Court of Appeals correctly held the trial judge's overruling of appellant's *Batson* objection was error. Therefore, I would affirm the judgment of the Court of Appeals. Because the majority does not, I respectfully dissent.

---

**10.** This factor is critical to appellate review. *Chambers,* 866 S.W.2d at 24–25(When we have reversed due to the State's race-neutral explana-

tions, evidence of disparate treatment has been a critical factor.).