Affirmed and Opinion filed November 10, 2005









Affirmed
and Opinion filed November 10, 2005.

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00642-CR

____________

 

JEREMIAH JOHNSON
PEETZ,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the County
Criminal Court at Law No. 7

Harris County, Texas

Trial Court Cause No. 1223063

 



 

O P I N I O N

A jury convicted appellant, Jeremiah
Johnson Peetz, of a Class A misdemeanor offense of assault, and found true an
enhancement paragraph that he intentionally selected the complainant, Jowanna
Green, on the basis of his bias and prejudice against her race.  The jury assessed punishment at 365 days in
county jail and a $4,000 fine.  On
appeal, appellant raises two points of error: (1) the trial court=s granting of the
State=s Batson
challenge; and (2) the trial court=s refusal to allow
the defense to exercise additional peremptory strikes once the trial court
reinstated two jurors.  We affirm.

 








Factual and Procedural Background

On December 5, 2003, appellant was driving
his Ford Explorer and passed a bus stop where complainant, Jowanna Green, was
waiting.  When he did so, he utilized a
modification made to his rear windshield wiper to spray an unknown liquid on
Ms. Green.  After appellant passed Ms.
Green, his cousin, who was riding with appellant, screamed out the window, AF--- you, you
n-----,@ while he Ashot the bird.@  Appellant later made a statement to the Metro
Police Department and, following an investigation, the State filed charges of a
Class A misdemeanor.  The State also
presented an enhancement paragraph alleging appellant had committed a hate
crime.  Complainant is black and
appellant is white.

Following voir dire, appellant exercised
his three peremptory strikes.  He used
all to exclude Aevery black person available to be on
[the] jury.@ 
The State then raised a Batson challenge.  Appellant offered race-neutral explanations
for each of the struck jurors, but the court ultimately upheld only one
challenge and placed the other excluded black jurors on the jury.  

The judge accepted appellant=s argument that
perhaps juror one was hostile to the defense and was thus properly struck.  However, the judge rejected appellant=s reasons for
excluding the other two jurors, jurors six and ten.  Appellant contended juror six had an angry
expression, her face resembled one part of the anatomy of a chicken,[1]
and she was reading a newspaper. 
Appellant claimed to reject juror ten because he had prior jury
experience, which appellant did not prefer, and was Areally glib.@  In response, the State and the court noted
that juror four, a white juror, also had prior jury experience and was not
struck.  After considering the reasons
offered, the court disagreed that appellant=s reasons for
striking jurors six and ten were truly race neutral.  She informed appellant=s attorney that
jurors six and ten would sit on the jury.

 








 

Appellant then requested two additional
peremptory strikes, but the court denied the request.  The jury ultimately convicted appellant and
found the enhancement paragraph true.

Analysis

I.        Racially-Motivated
Strikes 

In his first point of error, appellant
contends the trial court committed reversible error when it determined he
exercised his peremptory strikes based on race. 
We will affirm unless the court=s ruling was
clearly erroneous.  Emerson v. State,
851 S.W.2d 269, 273 (Tex. Crim. App. 1993) (en banc) (citations omitted).  We review the court=s determination
deferentially because it observed the attorneys and the prospective
jurors.  Id.  So long as the record supports the court=s findings, we
will affirm.  Id.  We view all evidence in the light most
favorable to the verdict.  Vargas v.
State, 838 S.W.2d 552, 554 (Tex. Crim. App. 1992) (en banc).

A.      Purpose
and procedure of a Batson hearing

The Fourteenth Amendment guarantees
persons the right to equal protection under the law, including freedom from
racial discrimination in jury selection. 
Georgia v. McCollum, 505 U.S. 42, 44 (1992) (citing Strauder
v. West Virginia, 100 U.S. 303 (1880)) (explaining that the Court has,
since 1880, maintained that racial discrimination by the State in jury
selection offends the Equal Protection Clause). 
The right does not merely encompass a defendant=s right to have a
jury selected without regard to race, but also protects prospective jurors= rights to serve
on a jury without regard to their race.  Id.
at 48.  Because the right attaches to
excluded jurors, the State may raise a Batson challenge on the jurors= behalf.  Id.








Once a party raises a Batson
challenge, the court must engage in a three-step process.  First, the party opposing the peremptory
strikes must make a prima facie showing of racial discrimination and thus
carries a burden of production.  Ford
v. State, 1 S.W.3d 691, 693 (Tex. Crim. App. 1999).  Second, the burden shifts to the party who
exercised the peremptory strikes to give a facially-neutral explanation.  Id. 
Finally, the court must determine whether or not the challenging party
has made out a case of discrimination.  Id.  The burden of persuasion always rests on the
party challenging the use of the peremptory strikes.  Id. (citing Purkett v. Elem,
514 U.S. 765, 767B68 (1995)).  However, the court must evaluate the reasons
proffered for the strikes in light of what it observes during voir dire and
during the Batson hearing.  See,
e.g., Johnson v. State, 68 S.W.3d 644, 649 (Tex. Crim. App. 2002)
(stating appellate courts must give great deference to the trial courts because
they make determinations based on credibility and demeanor in connection to the
Batson hearing).

B.      The
trial court=s role during the Batson hearing

Appellant argues that the court erred when
it failed to ask the State to rebut each and every one of appellant=s reasons for
exercising his strikes.  Specifically,
citing  Yarborough v. State, 947
S.W.2d 892 (Tex. Crim. App. 1997) (en banc), appellant argues we must accept as
true any assertion made during a Batson hearing unless the other party
contradicts it.  A close reading of Yarborough
invalidates appellant=s claim. 
In Yarborough, the Court of Criminal Appeals addressed
whether or not uncontradicted counsel statements were sufficient on appeal to
support a trial court=s finding. 
Id. at 893.  That question
is not before us in this case.  Here, the
question is whether the trial court must accept as true uncontradicted reasons
for strikes.  Yarborough does not
mandate the trial court accept any proffered justification for a strike.  Quite the opposite.  The Yarborough Court specifically
stated that Athe counsel (and the judge) naturally will
be the best-placed observers of the venire members.@  Id. at 895; see also Gibson
v. State, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004) (citation omitted)
(holding that A>pretext= is solely a
question of fact . . . [t]herefore, the trial court [is] in the best position
to make that credibility determination@).  Obviously, the Court of Criminal Appeals
intended the trial court to observe voir dire and rule according to its
observations.








Appellant=s argument also
misunderstands the procedure of a Batson hearing.  The first two steps of a Batson hearing
are simply evidentiary steps whereby both parties present their evidence to the
court.  Johnson v. California, 125
S. Ct. 2410, 2417B18 (2005). 
While any facially-neutral reason will suffice to meet appellant=s burden of
production for the second step, appellant is simply producing evidence for the
hearing.  It is at that point the court
evaluates the evidence presented and considers what it observed during voir
dire and the Batson hearing.  Id.
at 2418 (citing Purkett, 514 U.S. at 768).   We grant the lower court great deference
because it observes the attorneys and the prospective jurors, and is thus able
to evaluate whether the justifications proffered are genuine or not.  Johnson, 68 S.W.3d at 649.   Appellant seeks to transform the third step
into another evidentiary step and force the State to produce more
evidence.  While rebutting the
race-neutral justifications may be  helpful
to the courtCas the State did to show striking juror
ten was race basedCthe third step has always been the
evaluation stage of the Batson hearing and we will not alter the procedure
to require more of the challenging party. 
Neither do we accept appellant=s contention that
the court needed to Aarticulate sufficient contradictory
information@ to rebut defense counsel=s proffered
reasons.

C.      The
record support the trial court=s finding

This case concerned a racially-motivated
crime with a white defendant and a black victim.  Appellant was not entitled to be tried by an
all-white jury.  See generally McCollum,
505 U.S. at 46 (citing Strauder, 100 U.S. at 305 for the proposition
that Aa defendant has no
right to >a petit jury composed in whole or in part
of persons of his own race=@).  Here, the State met its burden of proof by
showing that appellant used all three peremptory strikes against the three
black jurors who would otherwise be empaneled. 
Appellant then met his burden of proof by providing facially-neutral
reasons for each of the three strikes. 
It was in the third step that the court evaluated the reasons appellant
proffered. 








The court granted the strike regarding one
of the black jurors, indicating that juror was indeed hostile to the defendant.
The court did not give a detailed reason for rejecting the strike against juror
six, who appellant claimed was angry. 
However, it did state that it disagreed with appellant=s characterization
and that it believed striking juror six was race-based.[2]  The court also believed appellant provided a
pretextual reason for striking juror ten. 
Appellant claimed to have struck juror ten because that juror had prior
jury experience and because he was Areally glib.@  Yet, juror four, a white juror, also had
prior jury experience.  Moreover, the
court again did not agree with appellant=s characterization
of juror ten=s demeanor.[3]  Both jurors six and ten indicated they could
follow the law and consider all ranges of punishment.  There is nothing on the record to support
appellant=s characterizations of them as angry,
glib, or somehow inappropriate for jury service.  Based on the record, we cannot say that the
court clearly erred in empaneling two qualified jurors whom it determined were
struck for no reason other than their race. 
We must rely on the court=s evaluation of
appellant=s credibility and its observations during
voir dire.  We overrule appellant=s first point of
error.

II.       Remedy
for Batson Violation

A.      A
trial court may fashion an appropriate remedy

In his second point of error, appellant
argues that even if he did violate Batson, the court nonetheless erred
by not restoring to him those two peremptory strikes.  Essentially, appellant asks us to adopt the
rule that a party may engage in racial discrimination and suffer no
consequences.  Adopting appellant=s rule would only
foster greater discrimination.  That we
will not do.








When a court finds a Batson
violation, it may fashion an appropriate remedy according to its
discretion.  State ex rel. Curry v.
Bowman, 885 S.W.2d 421, 425 (Tex. Crim. App. 1994) (en banc).  In this case, appellant argues that the court
impermissibly allowed him only one peremptory strike while allowing the State
three.  See Tex. Code Crim. Proc. Ann. Art.
35.15(c) (Vernon 1991) (providing each side three peremptory strikes in a
misdemeanor trial held in a county court at law).  However, appellant did exercise three
strikes.  But, he did so in a way the
court found to be impermissible, racially-motivated, and thus
unconstitutional.  As a remedy, the court
appropriately empaneled the two wrongfully-struck jurors.  Presumably, a further implication of the
court=s remedy was that
appellant lost his gamble in trying to exclude all blacks from the jury and did
not get the full effect of his strikes. 
That is not the same as not exercising his strikes, which is guaranteed
by statute.

Appellant cites two cases he believes
support this claim that a court must restore peremptory strikes.  See Perez v. State, 351 S.W.2d 234
(Tex. Crim. App. 1961); Truong v. State, 782 S.W.2d 904 (Tex. App.CHouston [14th
Dist.] 1989, pet ref=d). 
Those cases are inapposite.  In
those cases, the courts addressed counsel mistakes resulting in an exercise of
fewer strikes than allowed.  Perez,
351 S.W.2d at 234B35 (holding it is error to refuse to allow
an attorney to correct a strike when he meant to strike one juror, but
erroneously gave the name of another juror); Truong, 782 S.W.2d at 905
(determining it was error to empanel a juror that the attorney intended to
strike, but mistakenly failed indicate the strike in the proper form).  Those courts held that when a mistake results
in a loss of peremptory strikes, and it can be cured before the jury is sworn
in, the court must correct it.  But those
cases involved clerical mistakes resulting in the use of fewer peremptory
strikes than the law allows, while this case involves the deliberate misuse of
strikes.  The two are different
situations and merit different responses. 
The court appropriately fashioned a remedy that would penalize counsel
for unconstitutionally exercising peremptory strikes: she empaneled
wrongfully-struck jurors and refused to allow counsel to reuse these strikes,
thereby putting other litigants on notice of the unwanted consequences of
improperly using a peremptory strike.








B.      The
trial court fashioned an appropriate remedy for the violation

To hold that courts must restore the
misused peremptory strikes is not only against the purpose of Batson,
but also logically unsound.  The United
States Supreme Court sought to fulfill the purpose of the Fourteenth Amendment
in guaranteeing equal protection by eliminating race as an acceptable factor in
jury selection.  Were we to accept
appellant=s rule, we would undermine Batson,
for there would be no consequence for racially-motivated strikes.  If a trial court refuses to restore misused
strikes, litigants truly face a consequence and are less likely to engage in
improper, racially-motivated behavior. 
Such a remedy, though not required, is acceptable.

In short, appellant exercised his three
strikes, the court invalidated two of them, and appellant must cope with losing
his race-based gamble.  The effect of a
successful Batson challenge always has been that the party exercising
the strikes does not enjoy the benefit of those strikes. We hold the court did
not abuse its discretion in fashioning a remedy.  We overrule appellant=s second point of
error.

Conclusion

For the foregoing reasons, we overrule
appellant=s points of error and affirm the ruling of
the trial court.

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

 

Judgment
rendered and Opinion filed November 10, 2005.

Panel
consists of Justices Fowler, Edelman, and Guzman.

Publish
C Tex. R. App. P. 47.2(b).











[1]  While we do
not understand exactly what appellant=s
attorney meant by this description, she seems to have acted out precisely what
she meant by the phrase.  





[2]  We also note
that the record indicates no in-depth questioning of juror six to determine if
she were indeed hostile.  Regarding lack
of questioning, the Supreme Court has stated, Afailure
to engage in any meaningful voir dire examination on a subject [a party]
alleges it is concerned about is evidence suggesting that the explanation is a
sham and a pretext for discrimination.@  Miller-El v. Dretke, 125 S. Ct. 2317,
2328 (2005) (citation omitted).  Further,
appellant=s other justificationCthat
juror six was reading a newspaperCis not reflected
in the record.  Both of these reasons are
properly left to the trial judge to evaluate and rule on based upon what she
observed during voir dire.





[3]  As with juror
six, again there is no questioning we see indicating that appellant even
attempted to discern whether juror ten=s prior
jury service would somehow hinder his ability to serve on this case.  Additionally, appellant did not pursue
questioning regarding whether or not juror ten was truly Areally glib@ in
regards to this case.  Again, these are
credibility and demeanor determinations properly within the trial judge=s purview.