# PD-1239&1240-15

PD-1239-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/19/2015 6:11:29 PM
Accepted 10/20/2015 4:36:12 PM
ABEL ACOSTA
CLERK

## Nos. PD-1240-15; PD-1239-15

_____

### IN THE COURT OF CRIMINAL APPEALS OF TEXAS
### AUSTIN, TEXAS

_____

RICKEY GENE PIPPIN

Appellant-Petitioner

vs.

THE STATE OF TEXAS

Appellee-Respondent

_____

Petition for Discretionary Review from the
Eleventh Court of Appeals, Eastland, on transfer from Tarrant County
Appeal Numbers 11-14-00033-CR, 11-14-0032-CR
Trial Court Numbers 1288659D, 1224614D
297th District Court, Tarrant County, Honorable Everett Young, presiding

_____

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
October 19th, 2015

_____

FILED IN
COURT OF CRIMINAL APPEALS

October 20, 2015

ABEL ACOSTA, CLERK

Lisa Mullen
Attorney at Law
3149 Lackland Road, Suite 102
Fort Worth, Texas 76116
(817) 332-8900
State Bar No. 03254375
Lisa@MullenLawOffice.com

**Oral argument requested**

1

## *Table of Contents*

Table of Contents…………………………………………..2

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .…3

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . .…4

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..4

Statement of Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . .......5

Identity of Judge, Interested Parties, Counsel and Service…………………6

Ground Presented for Review.. . . . . . . . . .. . . . . . . . . . . . . . . . . . ......7

Ground 1…………………………………………………………......8

**THE COURT OF APPEALS ERRED IN NOT FINDING THE DISPARATE TREATMENT OF JURORS PROOF OF THE STATE'S PRETEXTUAL RACE-NEUTRAL EXPLANATION FOR STRIKING A JUROR IN THE FACE OF A BATSON CHALLENGE**

Conclusion and Prayer for Relief…………………………………………….19

Certificate of Service……………………………………………………20

Certificate of Compliance…………………………………………….....20

Appendix……………………………………………………………...21

EXHIBIT A: Eleventh Court of Appeals' August 21st, unpublished, Opinion

## TABLE OF AUTHORITIES

**Cases**

*Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986)  14, 17

*Cook v. State*, 858 S.W.2d 467 (Tex. Crim. App. 1993)  17

*Green v. State*, 310 S.W.3d 11 (Tex. App. – Dallas 2009, no pet.)  15, 16

*Miller-El v. Cockrell*, 537 U.S. 322 (2003)  14, 15

*Miller-El v. Dretke*, 545 U.S. 231, 125 S.Ct. 2317 (2005)  15, 16

*Pippin v. State*, No. 11-14-00032-CR; 11-14-00033-CR (mem, unpublished) (Tex. App. – Eastland, delivered August 21st, 2015)  passim

*Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769 (1995)  15, 16, 17

*Thomas v. State*, 209 S.W.3d 268 (Tex. App. –Houston [1st Dist] 2006, no pet.)  17, 18

*Yarborough v. State*, 947 S.W.2d 892 (Tex. Crim. App. 1997)  15, 16, 17

**Rules**

Tex. R. App. Pro. 9.4(i)(3)  20

Tex. R. App. Pro. 66.3 (a,b,c,f)  8

## *Statement Regarding Oral Argument*

Petitioner believes oral argument would assist this Court in the discussion and exploration of the issues presented. Because this petition presents new and important issues of jurisprudential value, its disposition will have significant impact on the bench and bar of the State of Texas. Therefore, Petitioner respectfully requests the opportunity to participate in oral argument in the instant case.

## *Statement of the Case*

This is an appeal from a guilty plea to the jury on two indictments joined for trial. R. Vol. V – 21 – 24. Appellant plead guilty to Felon in Possession of a Firearm and Bail Jumping, each with a habitual offender allegation, to which he also plead true. R. Vol. V – 21 – 24. After pleading guilty, the court proceeded to a punishment trial before the jury. R. Vol. V – 24 – 26. After the introduction of evidence, the jury, having been instructed to find Appellant guilty based upon his plea, found Appellant guilty and sentenced him to ninety nine years' incarceration in the Institutional Division of Texas Department of Criminal Justice. R. Vol. VII – 105.

Appellant timely filed written notice of appeal and the trial court certified Appellant's right of appeal. Tr. – 76, 78 (cause 659); 164 – 165. (cause 614). After extensions were granted, Appellant's brief was due October 3, 2014 and was timely filed.

# *Statement of Procedural History*

The instant appeal was heard by the Eleventh Court of Appeals pursuant to a transfer order from the Second Court of Appeals. On October 3, 2014, Petitioner's brief was timely filed raising one point of error based upon a *Batson* violation. Oral argument was granted and the case was argued before the Court on July 2nd, 2015. On August 21st, 2015, the Eleventh Court of Appeals denied the point of error to affirm the conviction.[1] A Motion for Rehearing was not filed. This Court granted an extension of time to file this petition for discretionary review which is presently due on October 21st, 2015, and will be timely filed.

---

[1] Pippin v. State, No. 11-14-00032-CR; 11-14-00033-CR (mem, unpublished) (Tex. App. – Eastland, delivered August 21st, 2015) (Attached as Appendix Exhibit A).

## *IDENTITY OF JUDGE, PARTIES & COUNSEL*

I, Lisa Mullen, do hereby certify that a true and correct copy of the foregoing

Appellant's brief was mailed on October 19th, 2015, to the interested parties listed below:

1) Tarrant County District Attorney's Office- Appellate Division
401 West Belknap
Fort Worth, Texas 76196-0201

2) Mr. Colin T. McLaughlin & Lisa Callahan
Assistant District Attorney, Tarrant County
401 West Belknap
Fort Worth, Texas 76196-0201

3) Mr. Ronald G. Couch, Esq., TRIAL COUNSEL
Attorney at Law
1207 S. White Chapel Blvd., Suite 125
Southlake, Texas      76069

4) Mr. Rickey Gene Pippin #01899848, PETITIONER
 James V. Allred Unit
 2101 FM 369 North
 Iowa Park, Texas    76367

5) The Honorable Everett Young- TRIAL COURT JUDGE
Retired presiding Judge, 297th Criminal District Court

*Lisa Mullen*
/s/ Lisa Mullen
ATTORNEY FOR APPELLANT
3149 Lackland Road, Ste. 102
Fort Worth, Texas 76116
(817) 332-8900
FAX: (817) 332-8904
Bar Number 03254375
Email: Lisa@Mullenlawoffice.com

6

## *Ground Presented for Review*

### GROUND ONE:

**THE COURT OF APPEALS ERRED IN NOT FINDING THE DISPARATE TREATMENT OF JURORS PROOF OF THE STATE'S PRETEXTUAL RACE-NEUTRAL EXPLANATION FOR STRIKING A JUROR IN THE FACE OF A BATSON CHALLENGE**

## *Argument Amplifying Reasons for Granting Review*

*Ground 1*: THE COURT OF APPEALS ERRED IN NOT FINDING THE DISPARATE TREATMENT OF JURORS PROOF OF THE STATE'S PRETEXTUAL RACE-NEUTRAL EXPLANATION FOR STRIKING A JUROR IN THE FACE OF A BATSON CHALLENGE

## REASONS FOR GRANTING REVIEW

1) Review should be granted pursuant to Tex. R. App. Pro.66.3 (c) and (a) because the court of appeals has decided an important question of state law- i.e., disparate treatment of jurors does not reflect proof of pre-textual race-neutral reasoning for striking a juror- in a way that conflicts with the applicable decisions of the Court of Criminal Appeals, the United States Supreme Court and other courts of appeals' decisions.

2) Review should be granted pursuant to Tex. R. App. Pro. 66.3 (f) because the court of appeals has so far departed from the accepted and usual course of judicial proceedings in their incorrect application of the law regarding disparate treatment of jurors so as to call for the exercise of this Court's supervisory power.

3) Review should be granted pursuant to Tex. R. App. Pro. 66.3 (b) because the court of appeals has decided an important question of state law i.e., whether disparate treatment of jurors negates race-neutral explanations, an issue that has not been, but desperately needs to be, settled and clarified by this Court.

Sixty prospective jurors were summoned for jury selection. R. Vol. V – 29; Supp. Clerk Record. Six African-American jurors were identified on the panel: juror number 7, who the defense struck, juror number 8, who was on the jury, juror number 14, who the state challenged for cause, juror number 46, who the state challenged for cause and jurors numbered seventeen and eighteen, both of which the state struck. R. Vol. V – 152 – 154,

8

161; Supplemental Clerk Record. Thus, the state was responsible for eliminating the majority, four of the six, African-American jurors. R. Vol. V – 152 – 154, 161; Supplemental Clerk Record. The defense urged a *Batson* challenge to the state's strikes of jurors numbered seventeen and eighteen, both African-American. R. Vol. V – 159. The court then called upon the state to provide racially neutral explanations to each strike. R. Vol. V – 159.

The prosecutor stated that juror number seventeen was struck due to two prior theft charges or convictions and provided plausible oral proof of the criminal history to substantiate this strike. R. Vol. V – 159 – 162. Thus, the strike of this juror is not challenged. However, the alleged race-neutral reason for striking juror number eighteen is the point of contention. The state alleged they struck juror eighteen because he had a bad experience with the police. R. Vol. V – 159. The prosecutor stated,

> And with regard to Mr. Webster, he indicated that he had a history of negative interactions with law enforcement. He also said he had some good ones. But since the primary witnesses in the State's case-in-chief are all police officers, the state's position was that we could not necessarily take the risk. Particularly when given the fact when we asked him the question concerning whether he had an issue with police officers, there was some delay in him giving his answer. He was really thinking about it. There was obviously some real concern. And he finally said he didn't think he would, but it took him a few moments to make that answer. That being the case that once again is a specific race neutral reason why we struck him.

R. Vol. V – 162 – 163.

The state went on to 'point out' that its "rather hard" for the defense to urge a *Batson* challenge when the defense struck an African-American juror and that the defense does not "get" to have African American jurors that they like. R. Vol. V – 160, 165-166. Further, and even more offensively, the prosecutor stated, "—the State, by the way, does not have any overwhelming belief that African Americans would be bad jurors in cases of

9

this nature". R. Vol. V – 160, 165-166. This statement reflects some belief, if not an overwhelming one, that African American's would be "bad" jurors. Thus, the state inadvertently admitted a belief system entrenched in the very thought process *Batson* forbade: selection of jurors based upon consideration of race. Yet still, the court denied the *Batson* challenge and the court of appeals erroneously reinforced this holding. R. Vol. V – 166.  Pippin v. State, No. 11-14-00032-CR; 11-14-00033-CR (mem, unpublished) (Tex. App. – Eastland, delivered August 21st, 2015) (Attached as Appendix Exhibit A).

The state's race neutral excuse for striking juror eighteen, Mr. Webster, is wholly implausible and lacks credibility when considered in light of the totality of the record and comparative juror analysis with five other prospective jurors who voiced virtually identical experiences with the police and whom the state did not strike. R. Vol. V – 63 – 75. Such disparate treatment between jurors reflects pre-textual explanation. During voir dire, the state began questioning jurors whom had a bad experience with law enforcement and specifically called on each juror who had such an experience. R. Vol. V – 63 – 75. The first person the state called upon was the African American juror in question, Mr. Webster. R. Vol. V – 63 – 64. The colloquy went as follows:

[PROSECUTOR]: And on the jury questionnaires, I notice that you had a not so good experience with police officers in the past, correct?

PROSPECTIVE JUROR: Yes.

[PROSECUTOR]: How long ago was that?

PROSPECTIVE JUROR: 2008 the last time.

[PROSECUTOR]: Was that here in Tarrant County?

PROSPECTIVE JUROR: Yes.

[PROSECUTOR]: And anything about that experience, sir, that would cause you to have a bias against police officers in this case?

PROSPECTIVE JUROR: No, because I've been treated fairly by others.

[PROSECUTOR]: Okay. All right. I appreciate that, sir. Thank you very much.

R. Vol. V – 63 – 64.

This exchange is the only purported excuse provided by the state for striking this African-American juror. R. Vol. V – 162 – 163. However, the state did not strike five other non-African-American jurors who expressed very similar or worse experiences with law enforcement. R. Vol. V – 63 – 75.

First, Mr. Maldonado, a juror the state did not strike, stated as follows:

[PROSECUTOR]: Mr. Maldonado?

PROSPECTIVE JUROR: Yes, sir.

[PROSECUTOR]: You indicated your brother has had a run-in with law enforcement, correct?

PROSPECTIVE JUROR: Yes, sir.

[PROSECUTOR]: Is there anything about that that would cause you to have a bias against police officers in this case?

PROSPECTIVE JUROR: No, sir.

[PROSECUTOR]: Okay. Thank you.

R. Vol. V – 69.

Second, Ms. Normand, who the state did not strike stated,

11

[PROSECUTOR]: Ms. Normand, you wrote on your questionnaire both you and your brother have had bad experiences. Is there anything about that that would cause you to start the officers out at a lower playing field?

PROSPECTIVE JUROR: No.

[PROSECUTOR]: No. When did – you talked about your brother. When did that happen?

PROSPECTIVE JUROR: My brother?

[PROSECUTOR]: Uh-huh.

PROSPECTIVE JUROR: A year ago.

[PROSECUTOR]: A year ago. Do you know if that was in Tarrant County?

PROSPECTIVE JUROR: Waco.

[PROSECUTOR]: Okay. Not in Tarrant County. And then what about your interaction with them, was that a couple years ago?

PROSPECTIVE JUROR: Five years ago.

[PROSECUTOR]: And nothing about that that would cause you to have a bias against the police officers in this case?

PROSPECTIVE JUROR: No.

[PROSECUTOR]: Thank you, ma'am.

R. Vol. V – 67 – 68.

Third, Mr. McDaniel expressed a similar bad experience with police and was not struck by the state. R. Vol. V – 68 – 69. The exchange went as follows:

[PROSECUTOR]: Mr. McDaniel, if you could stand. You indicated a [sic] incident involving your son; is that correct?

12

PROSPECTIVE JUROR: Yes, sir.

[PROSECUTOR]: Is there anything about that that would cause you to have a bias against police officers in this case?

PROSPECTIVE JUROR: No.

[PROSECUTOR]: Okay. Great. Thank you, sir.

R. Vol. V – 68 – 69.

Fourth, prospective juror Peterson expressed a bad experience with law enforcement yet was not struck by the state. R. Vol. V – 70 – 71. When the prosecutor questioned him the exchange went as follows:

[PROSECUTOR]: Mr. Peterson, you also indicated on your questionnaire that you have had – I think you said it was out of town, right?

PROSPECTIVE JUROR: Yes.

[PROSECUTOR]: Okay. Was it out of state?

PROSPECTIVE JUROR: No. East Texas.

[PROSECUTOR]: East Texas. Is there anything about that experience which that [sic] would cause you to have a bias in this case against police officers that might testify here?

PROSPECTIVE JUROR: Not at all.

[PROSECUTOR]: Okay. I appreciate that, sir. Thank you.

R. Vol. V – 70 – 71.

Fifth, and last, Ms. Merritt, expressed her son had bad experiences with police and the state did not strike her from jury service. R. Vol. V – 72. The following discussion was had:

13

[PROSECUTOR]: And I think I skipped Ms. Merritt. Your son has had dealing with police officers; is that correct?

PROSPECTIVE JUROR: Yes, yes.

[PROSECUTOR]: Was that here in Tarrant County?

PROSPECTIVE JUROR: No, sir.

[PROSECUTOR]: Do you know about how long ago that was?

PROSPECTIVE JUROR: Could be - - it was many years ago, but I think the latest was about two years ago.

[PROSECUTOR]: Two years ago?

PROSPECTIVE JUROR: Uh-huh.

[PROSECUTOR]: Anything about that instance or those instances that would cause you to have a bias in this case against police officers?

PROSPECTIVE JUROR: No. I was very grateful.

[PROSECUTOR]: And so you would start law enforcement on a level playing field?

PROSPECTIVE JUROR: Yes, sir.

[PROSECUTOR]: Thank you, ma'am. I appreciate that.

R. Vol. V – 72.

The state's sole race-neutral justification for striking Juror Webster was that he had a bad experience with law enforcement which, when compared to the five jurors who gave extremely similar responses that the state did not strike, is implausible. Supplemental Clerk Record. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986); *Miller-El v. Cockrell*, 537 U.S. 322 (2003); *Purkett v. Elem*, 514 U.S. 765, 115 S.Ct.

14

1769 (1995); *Yarborough v. State*, 947 S.W.2d 892 (Tex. Crim. App. 1997). Although contextually it is clear the state's reasoning was subterfuge, the lower court erroneously chose to find credibility in the argument by giving deference to the trial court's ruling. *Pippin v. State*, No. 11-14-00032-CR; 11-14-00033-CR (mem, unpublished) (Tex. App. – Eastland, delivered August 21ˢᵗ, 2015) However, this finding flies in the face of the law and the record. *Id*.

In determining purposeful discrimination, the persuasiveness of the state's justification for its peremptory strike is imperative and implausible justifications are considered mere pretexts for purposeful discrimination. *Id*. The state's explanation in the instant case is not persuasive when measured by the record as a whole and the comparative disparate treatment between the African-American juror with other jurors. *Id*.; *Miller-El v. Dretke*, 545 U.S. 231, 125 S.Ct. 2317 (2005); Snyder v. Louisiana, 552 U.S. 472, 128 S.Ct. 1203 (2008); *Green v. State*, 310 S.W.3d 11 (Tex. App. – Dallas 2009, no pet.).

Although the state, in an attempt to shore up the rationale, stated that the juror 'delayed' in his answer like he "really" had to "think about it", the record does not support this statement. R. Vol. V – 162 – 163, 63 - 64. First, there is no indication in the Reporter's record to indicate any type of delay or hesitation as the reporter did with other jurors in their responses. For example, Juror Merritt hesitated in one of her responses which was denoted by the "- -" in her answer. R. Vol. V – 72. There is no hesitation whatsoever denoted in the court reporter's record concerning Juror Webster's answers. R. Vol. V – 63 – 64. Second, this hesitation is not borne out in the record because the prosecutor did not press the juror further nor did he ask the juror why he had hesitation or

15

that he appeared to not be sure of his answer. R. Vol. V – 63 – 64. Courts have uniformly cautioned against subjective evaluations of venire members by the state which can be used as subterfuge to disguise violations of *Batson* and its progeny. *Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769 (1995); *Yarborough v. State*, 947 S.W.2d 892 (Tex. Crim. App. 1997). However, the court of appeals relied on this justification to allow the strike. *Pippin v. State*, No. 11-14-00032-CR; 11-14-00033-CR (mem, unpublished) (Tex. App. – Eastland, delivered August 21st, 2015) (Attached as Appendix Exhibit A).

Further, the state attempted to justify the strike because juror Webster "finally said he didn't ***think*** he would" have a bias against law enforcement. (emphasis supplied) R. Vol. V – 163. This reason is patently unreasonable in that it is simply ***not true***. The juror unequivocally stated he affirmatively would not be biased because he had been treated fairly by other police officers. R. Vol. V – 64. The court of appeals dismissed this characterization as unimportant; however precedence states otherwise. Where the state's explanation for a strike is clearly contradicted by the record, it is not an innocent mistake, but persuasive evidence of a pre-textual strike. *Miller-El v. Dretke*, 545 U.S. 231, 125 S.Ct. 2317 (2005); *Snyder v. Louisiana*, 552 U.S. 472, 128 S.Ct. 1203 (2008); *Green v. State*, 310 S.W.3d 11 (Tex. App. – Dallas 2009, no pet.).

The court of appeals also incorrectly found it unimportant that the state argued wholly irrelevant justifications, i.e., that the defense could not complain about a lack of African-American jurors when they struck one themselves, as well as the fact the defendant was not African-American. R. Vol. V – 160, 165. The prosecutor stated, "Well the state would point out it's rather hard to complain about a lack of African-American jurors when you've struck one." R. Vol. V – 165. These arguments have no bearing

16

whatsoever in a *Batson* challenge and speak of subterfuge. *State v. Oliver*, 808 S.W.2d 492 (Tex. Crim. App. 1991); *Cook v. State*, 858 S.W.2d 467 (Tex. Crim. App. 1993). However, based on the state's arguments the trial court found the defense "failed to establish a pattern of racial discrimination" and denied the *Batson* challenge. R. Vol. V – 166. This finding itself is clearly erroneous on its face. A determination of a pattern of discrimination is wholly inapplicable to the *Batson* query. *Id.* In *Batson* the Supreme Court explicitly held that a pattern of discrimination is *not* required to be shown; the exercise of even one racially-motivated peremptory strike invalidates the jury selection process and requires a new trial. *Id.*; *Thomas v. State*, 209 S.W.3d 268 (Tex. App. – Houston [1st Dist.] 2006, no pet.). Yet, the court of appeals still deferred to the trial court's erroneous ruling. *Pippin v. State*, No. 11-14-00032-CR; 11-14-00033-CR (mem, unpublished) (Tex. App. – Eastland, delivered August 21st, 2015).

The court of appeals wholly erred, subverted and ignored precedent of this Court and the United States Supreme Court and so far departed from the regular and accepted course of judicial proceedings in finding the race-neutral explanation given by the state to be credible so as to require the exercise of this Court's supervisory power and reinforcement through clarification of the *Batson* doctrine. Given the totality of the record, the state's rationale was not borne out, not genuine and a mere pretext excuse to strike an African-American juror. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986); *Miller-El v. Cockrell*, 537 U.S. 322 (2003); *Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769 (1995); *Yarborough v. State*, 947 S.W.2d 892 (Tex. Crim. App. 1997). If the state truly struck the juror in question because he had a bad experience with the police, they would have also struck one or more of the five other jurors who were similarly

17

situated. Because the exercise of even one racially-motivated peremptory strike invalidates the jury selection process, the court of appeals must be reversed and the case remanded for a new trial. *Id*.; *Thomas v. State*, 209 S.W.3d 268 (Tex. App. –Houston [1st Dist.] 2006, no pet.).

### _Conclusion and Prayer for Relief_

**WHEREFORE, ALL PREMISES CONSIDERED**, petitioner prays this Court grant review and, after a full briefing on the merits, issue an opinion reversing and remanding and resolving this important issue so that the bench and bar of this state will know how to address similar issues in the future.

Respectfully submitted,

_Lisa Mullen_

/s/ Lisa Mullen
Attorney at Law
3149 Lackland Road, Suite 102
Fort Worth, Texas 76116
(817) 332-8900
State Bar No. 03254375
Lisa@MullenLawOffice.com

## *Certificate of Service*

I hereby certify that a true copy of this document was served on October 19th, 2015, by mail delivery upon Assistant District Attorney Charles Mallin, Appellate Section, Tarrant County District Attorney's Office, 401 West Belknap, Fort Worth, Texas 76104, and by mail delivery upon the Office of the State Prosecuting Attorney, P.O. Box 13046, Capitol Station, Austin, Texas 78711.

*Lisa Mullen*

/s/ Lisa Mullen
Attorney at Law

## *CERTIFICATE OF COMPLIANCE*

I, Lisa Mullen, pursuant to Rule 9.4(i)(2)(D) of the Texas Rules of Appellate Procedure, do hereby certify the word count of the applicable portions of this Petition for Discretionary Review is 3,887 words and within the 4,500 word limit as required by the rules.

*Lisa Mullen*

/s/ Lisa Mullen
Attorney at Law
3149 Lackland Road, Suite 102
Fort Worth, Texas 76116
(817) 332-8900
State Bar No. 03254375
Lisa@MullenLawOffice.com

# APPENDIX

# EXHIBIT A



In The

# Eleventh Court of Appeals

_____

## Nos. 11-14-00032-CR & 11-14-00033-CR

_____

### RICKEY GENE PIPPIN, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 297th District Court**
**Tarrant County, Texas**
**Trial Court Cause Nos. 1224614D & 1288659D**

### M E M O R A N D U M   O P I N I O N

The grand jury returned two indictments against Appellant, Rickey Gene Pippin: one for unlawful possession of a firearm and the second for bail jumping.[1] He pleaded guilty to each offense and pleaded "true" to the enhancement allegations that were contained in the "Habitual Offender Notice" in each indictment. The jury found him guilty, found the enhancement allegations in the habitual offender notice to be "true" for each indictment, and assessed punishment

---

[1]TEX. PENAL CODE ANN. § 38.10 (Bail Jumping and Failure to Appear), § 46.04 (Unlawful Possession of Firearm) (West 2011).

at confinement for ninety-nine years in each case. The trial court sentenced him accordingly. Appellant argues in both appeals the sole issue that the trial court erred when it denied his *Batson*[2] challenge. We affirm.

## I. *Voir Dire Proceeding*

Of the sixty members that comprised the venire panel, six were African-Americans: Veniremember Nos. Seven, Eight, Fourteen, Seventeen, Eighteen, and Forty-six. Both the State and Appellant[3] agreed to dismiss Veniremember Nos. Fourteen and Forty-six for cause. Appellant used a peremptory strike on Veniremember No. Seven. The State used peremptory strikes on Veniremember Nos. Seventeen and Eighteen. Veniremember No. Eight sat on the jury.

Appellant raised a *Batson* challenge against the State's strikes of Veniremember Nos. Seventeen and Eighteen. The State argued that Veniremember No. Seventeen had previous theft charges against her and that Veniremember No. Eighteen had had a bad experience with police in the past. The State further argued that, although Veniremember No. Eighteen said he could be fair, he hesitated before he answered; that was why the State struck him. The trial court denied Appellant's *Batson* challenge, and found "that the State exercised its challenges . . . for racially neutral reasons, and that the defense has failed to establish a pattern of racial discrimination." Appellant challenges, on appeal, the ruling of the trial court as to Veniremember No. Eighteen.

## II. *Analysis*

Three steps are involved in a *Batson* challenge to the State's use of peremptory strikes. The defendant must first make a prima facie showing of racial discrimination. *Hernandez v. New York*, 500 U.S. 352, 358 (1991). After the defendant makes a prima facie showing of racial discrimination, the State must

---

[2]*See Batson v. Kentucky*, 476 U.S. 79 (1986).

[3]Appellant is Caucasian.

2

articulate a race-neutral explanation for its strike. *Batson*, 476 U.S. at 97–98; *Guzman v. State*, 85 S.W.3d 242, 245 (Tex. Crim. App. 2002). The third step requires the defendant to carry the burden of persuasion that the State's neutral explanation is a "pretext" to disguise racial discrimination. *Jackson v. State*, 442 S.W.3d 771, 774 (Tex. App.—Texarkana 2014, no pet.) (citing *Batson*, 476 U.S. at 98); *see Keeton v. State*, 724 S.W.2d 58, 65 (Tex. Crim. App. 1987) (*Keeton I*). The trial court must determine the fact question of whether the race-neutral reason proffered by the State is a mere pretext for purposeful discrimination. *Watkins v. State*, 245 S.W.3d 444, 447 (Tex. Crim. App. 2008); *Jackson*, 442 S.W.3d at 774.

A.  *Standard of Review*

On a *Batson* challenge, we examine the evidence in the light most favorable to the ruling of the trial court and determine whether the record supports the findings of the trial court. *See Keeton v. State*, 749 S.W.2d 861, 870 (Tex. Crim. App. 1988) (*Keeton II*). Our review of the record is "highly deferential" to the trial court. *Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004). If the record contains sufficient evidence to support the trial court's findings that there was no purposeful racial discrimination, those findings will not be disturbed. *Id.* We may not substitute our judgment for that of the trial court. *Nieto v. State*, 365 S.W.3d 673, 681 (Tex. Crim. App. 2012).

B.  *Batson Challenge: Steps One and Two*

No one claimed that Appellant failed to make a prima facie showing of racial discrimination under the first step. Moving to the second step, the State had to provide a race-neutral explanation for its strike. A race-neutral explanation "means an explanation based on something other than the race of the juror." *Hernandez*, 500 U.S. at 360; *see Watkins*, 245 S.W.3d at 447. If race-neutral on its face, the reason offered by the State will be deemed race-neutral unless a discriminatory intent is inherent in the State's explanation of its strike.

discrimination. *Grant v. State*, 325 S.W.3d 655, 657 (Tex. Crim. App. 2010) (citing *Batson*, 476 U.S. at 96–98). Five nonexclusive factors to consider when determining if the State's race-neutral explanation is genuine include whether:

(1)     the reason given by the State is related to the facts of the case;

(2)     the State performed a meaningful examination of the challenged venireperson;

(3)     the State did not strike other venirepersons with the same or similar traits as the challenged venireperson;

(4)     there was a disparate examination of the challenged venireperson when compared to the examination of the unchallenged venirepersons; and

(5)     the State based its explanation on a group bias even though the specific trait was not shown to apply to the challenged venireperson.

*Williams*, 804 S.W.2d at 106; *see Keeton II*, 749 S.W.2d at 866. Disparate treatment of veniremembers, which is a factor the trial court may consider, may include the State's failure to question minority veniremembers before striking them or the State's striking of minority veniremembers who gave similar answers as majority veniremembers, when the latter were not struck by the State. *Young v. State*, 826 S.W.2d 141, 145 (Tex. Crim. App. 1991). And, if the State gives "mixed motives" for striking a veniremember and the defendant makes a prima facie showing of discriminatory purpose, the State "must demonstrate that [it] would have exercised the peremptory strike even if the improper factor had not existed or contributed to the decision to strike the prospective juror." *Guzman*, 85 S.W.3d at 253, 254. Furthermore, the defendant, for the first time on appeal, may raise disparate treatment to show the State's race-neutral explanation was, in fact, a pretext. *Young*, 826 S.W.2d at 145.

Appellant contends that the State showed disparate treatment toward Veniremember No. Eighteen, that the State misstated Veniremember No. Eighteen's response to questioning, and that the State gave additional reasons

5

*Guzman*, 85 S.W.3d at 246. And, if the State offers a facially valid explanation for its strike, it has rebutted the presumption of purposeful discrimination. *Williams v. State*, 804 S.W.2d 95, 101 (Tex. Crim. App. 1991).

A bad experience with police and hesitancy in answering a question are both valid, race-neutral reasons for striking a veniremember. *Kennerson v. State*, 984 S.W.2d 705 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd) (unpublished in part, available online) (hesitancy); *Davis v. State*, 964 S.W.2d 352, 355 (Tex. App.—Fort Worth 1998, no pet.) (experience with police). The State questioned the veniremembers about their experiences with law enforcement, and Veniremember No. Eighteen stated that he had had a bad experience with police before but could be fair. One of the prosecutors gave the first explanation for striking Veniremember No. Eighteen—that he had had a bad experience with police officers. The other prosecutor explained further that Veniremember No. Eighteen hesitated before he gave his answer that he could be fair toward police officers as witnesses. The State's explanations, that they struck Veniremember No. Eighteen because he had had a bad experience with police and because he hesitated when he answered whether he could be fair, are race-neutral and satisfied the State's burden that requires articulation of a nondiscriminatory reason for the strike. *See Keeton I*, 724 S.W.2d at 65; *Kennerson*, 984 S.W.2d 705 (holding that hesitancy is a permissible reason for striking a panelist from the venire); *Davis*, 964 S.W.2d at 355 (holding that a bad experience with police is a permissible reason for striking a panelist from the venire).

### C. Batson Challenge: Step Three

The third step requires the defendant to carry the burden of persuasion that the neutral explanation provided by the State was a "pretext" to disguise racial discrimination. *Keeton I*, 724 S.W.2d at 65; *Jackson*, 442 S.W.3d at 774. The trial court must then determine whether the defendant has proved purposeful racial

4

that were inapplicable to *Batson*. The State told the trial court that it struck Veniremember No. Eighteen because he had had a bad experience with police officers and because he had hesitated before he answered that he could be fair toward police officers as witnesses. This occurrence is proved on the record because it was not rebutted. *See Nieto*, 365 S.W.3d at 680; *Yarborough v. State*, 947 S.W.2d 892, 895 (Tex. Crim. App. 1997). And, contrary to Appellant's contention that "- -" missing from the reporter's record shows that no hesitation occurred, the reporter appears to use "--" to show breaks that occur while a person was speaking, not hesitation prior to speaking.

Although other veniremembers may have had similar answers to Veniremember No. Eighteen and were not struck, the record does not indicate that any of those veniremembers hesitated in their answers about being fair. Furthermore, even though the State gave additional inapplicable reasons for the strike, the trial court was the judge of their credibility, and we defer to the judgment of the trial court. *See Thaler v. Haynes*, 559 U.S. 43, 49 (2010). The trial court's ruling—that the State did not exercise disparate treatment toward Veniremember No. Eighteen—is supported by the record. *See Young*, 826 S.W.2d at 145. Appellant has failed to meet his burden to show that the State engaged in purposeful racial discrimination in its challenge to Veniremember No. Eighteen. We overrule Appellant's sole issue in each appeal.

### III. *This Court's Ruling*

We affirm the judgments of the trial court.

August 21, 2015                                      MIKE WILLSON

Do not publish. *See* TEX. R. APP. P. 47.2(b).          JUSTICE

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

6